# Clark *against* Everly.

The Act of 3d April 1830, does not apply to the case of a landlord and tenant, where the tenant refuses to pay rent under a claim of right to the reversion, which, being a denial of the landlord's title, gives him an immediate right of entry and action at the common law.

ERROR to the Common Pleas of the county of *Philadelphia*.

This was an appeal from the judgment of two justices in a proceeding to obtain possession of premises in Fifth between Pine and Lombard streets in the city of Philadelphia, instituted by Lewis Clark against Miller N. Everly. A verdict and judgment were rendered in favour of the defendant. The facts of the case and points of law involved appear in the following charge of the court below, delivered by Judge PARSONS.

This is a proceeding which was instituted before two magistrates under the Act of April 1830, to dispossess an alleged tenant from premises said to be leased, upon the ground that the rent has not been paid nor sufficient goods upon the premises when the rent became due to pay it.

It would seem from the evidence, that in the year 1826, these premises were leased from the late Judge Morton by the defendant and one Bussier, at an alleged rent of $100 per annum; at what time in the year is not very certain, nor is there any evidence of payment of rent to Judge Morton, but of one quarter. It appears by the admission of counsel, that Judge Morton died in 1828; that he left but one daughter, and she an only child, who was married to Clark, the plaintiff; that she died about the year 1832, leaving issue by her marriage with Clark. It does not appear by any evidence that Clark ever demanded rent from the defendant until the 21st October 1841, when a notice was served, on which this

proceeding was predicated, without specifying what rent he claimed, when it accrued, whether before or after the death of Judge Morton, or in what capacity except that of lessee. It also appears that the title to these premises is disputed by the defendant; that he alleges Judge Morton made a will by which he devised these premises to the mother of the defendant and to him, and that the plaintiff destroyed that will, and its validity and the title to these premises are about to be tested by a trial before the United States District Court for the Eastern District of Pennsylvania; and that for the last ten years or more the parties have been in controversy about this property. On this brief outline of the facts and others which will be found in reference to the testimony in the case, a number of interesting questions of law are presented for our decision.

Most, if not all, are raised by the various points that have been submitted to us by the defendant, on which he asks instruction to the jury. The first is this:

1. That the plaintiff was not the lessor of the defendant, and the heir of the lessor cannot avail himself of this remedy.

When this position was first assumed, I was inclined to think it correct, owing to the peculiar phraseology of the Act of 1830, which only provides that the " lessor" may commence these proceedings; but on reflection, I am inclined to think such is not the law, and therefore answer it in the negative; for although true it is, the Act only gives the remedy to the lessor, and does not mention the heir or assignee of the term, still from analogy to the law in relation to lessor and lessee or landlord and tenant, I think it has reference to a *legal lessor*, one who is created by operation of law, as well as to him who assigns the lease.

In every leasing there is a *reversionary* interest either expressed or implied. When the lessor in fact dies, the rent which accrues after his decease goes to the heir at law; and when the term expires, the right to repossess the property is vèsted in the heir. He may recover under the common law remedy by an action of ejectment, or can proceed under the provisions of the Act of 1772, by an application to two justices, and regain the possession. If then the heir is entitled to rent and to the reversionary interest, or the possession of the property, why should he not have all the means for enforcing those claims which his ancestor had? His proceeding is only a means, as I shall hereafter show, of collecting the rent or of regaining the possession in default of payment. It will not be pretended he could not maintain an action of debt or covenant for the rent, or issue his warrant of distress; and upon what principle is he authorized to assert those rights? Purely because the relation of landlord and tenant exists, or to use the language of this Act, that of lessor and lessee. Now if this relationship is created by the death of the ancestor, the lessor, and all his rights descend to the heir, most assuredly he is clothed with all the

[Clark v. Everly.]

authority which belonged to the ancestor, and consequently he may use all the remedies for enforcing those rights given by the law, which the original lessor had. The right and the remedy must attend each other.

2. That the lessor must accompany his notice to quit with a demand for the amount of rent claimed, when given to the lessee.

I think this is a fair construction of the Act of 1830. This right given to the lessor to give a notice and then commence these proceedings is only another means of enforcing the payment of the rent, and that too in a way quite more summary than by the warrant of distress, and no principle is better settled than that a distress warrant must set forth a sum certain which is due for the rent, in order that the bailiff may know what amount of goods to distrain and to inform the tenant what sum of money he must tender, in order to relieve his property from the seizure, and all the forms prescribed by the Act of 1772 are based upon the supposition that a sum certain is demanded in the warrant to the bailiff. If then this is only a means used to compel the payment of rent, should not the tenant be apprized of the sum claimed ?

The latter part of the Act also provides that on the payment of the amount due, at any time before he is dispossessed, he shall be entitled to retain the possession, clearly showing that the amount of rent due is all that the lessor can demand. Now a tenant may be willing to pay all which is due, and may suppose he has paid all which has accrued, and if informed of any default would instantly discharge that sum. But if the landlord has only to give a notice to quit, he compels the lessee to become a party to a lawsuit against his will, no matter how desirous he may be to pay the rent;—and the propriety of giving this construction to the Act could not be more strongly exemplified than in this case.

Judge Morton, the lessor, died in 1828. No demand for rent is made till 1841, a period of thirteen years. A notice is then given that the rent is not paid, and unless paid within thirty days, the tenant must surrender up possession, without stating whether the plaintiff claimed the rent which accrued before or after the death of Judge Morton, without informing him for what years the rent was in arrears, or stating any specific sum demanded. Such, I think, the Legislature never intended should be the law.

3. The lessor must prove that he proceeded regularly in all respects under the Act of 1830, down to the time of appeal. This is the law, and the court answer it in the affirmative.

4. The lessor must prove there was not sufficient goods on the premises to pay the rent, and if there were two or more premises included in the lease, he must prove there was not sufficient on either of them. This point the court answer in the affirmative; it is a question for the jury to decide.

5. That the notice to quit must be served upon the individual residing on the premises.

[Clark v. Everly.]

The court decide that this is the law.　It appears that for four years past Everly has rented the premises in dispute to one Sweeny, who has paid rent to him; that the present defendant did not reside upon any part of them, and the notice to quit was given to and served upon Everly, who resided in another house a number of squares off, and that this notice was given to him, and no notice was ever given to Sweeny.　Such is the evidence, and is an undisputed state of the facts in the cause; hence we instruct the jury that this is fatal to the plaintiff's right to recover.　He was bound to serve the notice of the non-payment of rent upon the tenant in the actual possession at the time, in order to deprive him of his estate.　If he was a sub-lessee, he cannot be turned out of his possession without notice, for he may be willing to pay the rent demanded rather than to be turned with his family into the street. From analogy to all judicial proceeding for the recovery of the possession of real estate, the tenant in possession must be served with process, or he is not affected by the judgment of the tribunal that is to deprive him of his possession.　Sweeny was called by the plaintiff as a witness, and he testifies that he was in possession in 1841, and is at this time, and he was never notified to quit. The agent of the plaintiff says he gave him no notice; how then can this court render a judgment that deprives this man of his house, by process of execution, without letting him have his day in court, giving him an opportunity to be heard?　He has the actual possession, the *possessio pedis*, and he is to be deeply affected by the process of the court; and if so, he is entitled to be heard and have notice when we will hear him.　No notice having been given him, I think the plaintiff cannot recover.

6. That it being proved that the title comes in question between the parties by the claim of a devise since the execution of the lease, the justices had no jurisdiction, and this court has only the same jurisdiction of the matter as the justices.　No principle is better settled than that want of jurisdiction can be taken advantage of at any stage of the proceedings in a common law court, and it is equally clear that justices of the peace have no jurisdiction when the title to real estate is to be tried.　So far has our Supreme Court gone, that they have decided that a magistrate's jurisdiction is taken away when the title to land may come in question.　Now, while it is cheerfully admitted that the tenant cannot dispute the title of the landlord, his original lessor, unless there is a fraud or mistake in procuring the lease, still I think that principle cannot operate in a case like the present.　Here the heir at law of the original lessor claims the possession, and the defendant claims to hold the possession of the property by virtue of a devise from the ancestor, and such is the evidence before us.　Now it is clear that the justices could not try the validity of that will, or the fact whether such a devise was made or not; of course this court cannot try it on an appeal.　The present defendant does not dispute the

original title of the person from whom he leased; but he alleges to claim by a legal title devised from him in opposition to the heir at law. If the defendant had come into court and offered to show that Judge Morton had executed to him a deed for this property after the lease and before his death, and the plaintiff had replied or alleged that the deed was a forgery, I think it would hardly be contended the magistrates would have tried the question of its validity; and most undoubtedly this court would feel bound to decide that they had no jurisdiction, and direct a verdict in favour of the defendant, unless the plaintiff chose to discontinue his proceedings. Upon the same principle we feel compelled to decide now; we cannot, in this form of action, decide upon the validity of the alleged will, and therefore instruct the jury that on this ground the plaintiff cannot recover.

7. That the complaint originally made before the justices must state the amount due upon oath or affirmation of the lessor.

If we are right in our answer to the second point proposed by the defendant, this necessarily follows as the basis of the plaintiff's proceedings before the justices; and we answer it as that has been already answered. On the whole evidence in the cause, for the reasons above given, the court feel compelled to instruct the jury that the plaintiff cannot recover, and therefore their verdict ought to be given in favour of the defendant.

The plaintiff excepted to the charge.

*Markland*, for the plaintiff in error.
*Phillips*, contra.

The opinion of the Court was delivered by

GIBSON, C. J. — As a landlord could not, at common law, annul his tenant's lease for non-payment of rent or want of property on the premises to answer a distress, the tenant could retain the possession against him, though it were certain that not a shilling would eventually be recovered. The landlord had no choice but to await the expiration of the term, and repose, in the mean time, on his common-law remedies of distress and action, so far as they should avail him; for such was the basis of the lease. Like every other contract, it could be dissolved only by the concurrent assent of the parties which had constituted it. A lease, therefore, was not determinable by the act of only one of them; for even forfeiture, of which non-payment of rent, however, was not a cause, required an entry by the landlord to revest the possession. On the same principle was a lease determinable by surrender, express or implied. In *Savage* v. *Dent*, (2 *Stra.* 1064), it seems to have been considered that abandonment of the premises is an implied surrender; yet an ejectment founded on a lease sealed after entry on the vacant premises was deemed necessary to change the relation of landlord and tenant. Perhaps we went further in *M'Kin-*

[Clark v. Everly.]

*ney* v. *Reader*, (7 *Watts* 123), by considering flight, combined with a fraudulent removal of the tenant's family and effects, to be an implied surrender which authorized the landlord to enter, and gave him a ground of defence against the tenant's action of trespass. Still the provisions of the common law were found to be inadequate to the landlord's security in all cases; and the 11 G. 2, c. 19, as well as the 57 G. 3, c. 25, was enacted to give him at least a more efficacious remedy for desertion without leaving enough for the rent. These statutes were not extended to Pennsylvania; and it was not till 1830 that provision was made by our own Legislature. In that year was enacted the statute on which the proceeding before us is founded, and by which it was declared that neglect or refusal to pay the rent for premises destitute of chattels to answer a distress shall authorize the landlord to give notice to quit at the end of fifteen days; and on the tenant's refusal to pay or quit, to recover the premises by a summary proceeding before two justices or aldermen. Why was this remedy given? Because, for the hopeless continuance of an insolvent tenancy, the landlord would else have had no remedy at all. The grievance was not an abandonment of the lease, but a neglect or inability to make satisfaction. For abandonment, as appears in *Savage* v. *Dent*, he had remedy by entry and ejectment, and with us, perhaps, by entry alone; but for the tenant's insolvency there was no remedy whatever. Why, then, should the provisions of our statute be extended to a refusal to pay under a claim of right to the reversion, which, being a denial of the landlord's title, gives him an immediate right of entry and action at the common law? The statute remedy is founded on a continuance of the tenure till the moment of notice to quit, which is required not only to warn the tenant, but to dissolve the tenancy; but a previous repudiation of the lease, which equally puts an end to it, renders notice unnecessary, and gives the landlord a right to recover at the common law, unless the tenant disprove the lease. When that is done, a conflict of adverse paramount title arises, which the Legislature has never confided to the determination of a summary tribunal. A proceeding under the Landlord and Tenant Act of 1772 may be arrested by an allegation of title derived from the lessor to a third person; and the Act of 1836, which gives a similar remedy to purchasers at sheriff's sale, contains an analogous provision. On the same principle of incompetency to decide, justices are forbidden to hold jurisdiction of title to land brought collaterally into contest, in an action of trespass, trover, or debt. Now it appeared in the case before us that Judge Morton, the lessor whose title the plaintiff claims, died in 1828, leaving a daughter, his only child, who intermarried with the plaintiff, and died in 1832, leaving issue; and that the defendant, Everly, was not required to pay till 1841, when, rent being demanded of him, and payment refused on the ground of the plaintiff's supposed want of title, this pro-

ceeding was instituted. And what was the cause of the procrastination? It was because the plaintiff's title had been denied by the defendant, who claimed the premises under a devise in Judge Morton's will, which, he alleged, was destroyed by the plaintiff and his wife. Now the statute gives an appeal in this proceeding, not for the trial of a collateral fact started by the defendant, as under the Act of 1772 or the Act of 1836, but for trial of the facts which have been passed on by the justices, who are incompetent to pass on the title to land. But, though adverse title cannot be set up in the Common Pleas as a defence on the merits, an assertion of it previous to the commencement of the proceeding may be set up as an insuperable objection to the jurisdiction; and where the fact of assertion is sustained by evidence, it is fatal to the proceeding, without regard to the validity of the title. I mean by this, that where the tenant has denied the landlord's title, he has waived his defence on the lease, and given a common-law action against himself, which it was not the design of the Legislature to supplant. By challenging the plaintiff's right to the reversion the defendant tendered an issue on the title which the plaintiff could not decline, in order to obtain the possession, without meeting the defendant before a jury on his own ground. It may be thought that, to make out a *primâ facie* case, the plaintiff was bound to show no more than that he is the owner of the lease; but to do that involved a question of contested title to the reversion, which the aldermen were incompetent to decide. As there was no jurisdiction, the other points made at the trial were not legitimately raised, and it would be improper to consider them.

Judgment affirmed.