# Robinson's Appeal.

1. A decree of sale by the Orphans' Court is definitive, and an appeal may be taken before the execution of the order to sell.

2. The decree condemns the property to conversion, and the owner's title to divestiture.

3. The order which follows the decree is but the process to execute the decree.

4. When the decree is affirmed by the Supreme Court on appeal, it returns to the Orphans' Court for execution simply, and from the consequent order to sell, no appeal lies.

5. An order to sell by the Orphans' Court after the return from the Supreme Court is but a renewal of process. It is interlocutory, and no further final decree takes place until the sale is made, returned and confirmed.

6. A recognisance before a decree for distribution of proceeds of sale in the Orphans' Court, cannot be taken for payment to the heirs directly, but should require the money to be paid into court or to the administrator, to be brought into court.

7. Brooks *v*. Snyder, 12 Wright 86, recognised.

8. The whole system of Orphans' Court sales of real estate requires the proceeds to be made subject to the court for the protection of creditors, and to determine the parties and their shares in the distribution.

[Robinson's Appeal.]

May 12th and 13th 1869.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Cumberland county*: No. 102, to May Term 1869.

The appeal was by Lewis Robinson and Ellen his wife, late Ellen Glancey, in the estate of William Glancey, deceased.

On the 21st of August 1866, Adam Peffer, and Elizabeth his wife in her right, petitioned the Orphans' Court, setting forth the death of the decedent intestate, leaving four children, viz : Mrs. Peffer, Esther and Margaret Glancey, and Ellen, now intermarried with Lewis Robinson, that the intestate died seized of certain real estate in Carlisle, and prayed the court to award an inquest to make partition.    On the 21st of August the inquest was awarded.    The inquest returned that the real estate could not be divided, &c., and valued it at $2600.    Notice of the taking of the inquisition having been given according to the order of court, the inquisition was confirmed October 23d, and a rule granted on the parties to accept or refuse the real estate at the valuation.    Exceptions were filed by Robinson and wife.

On the 1st of March 1867, the parties, being all the children of the decedent, filed an agreement " That they will immediately make arrangements for an amicable and equal division of the personal property ; and if they cannot agree among themselves on said division, William M. Penrose and W. H. Miller, Esqr's., shall select three persons who shall make said division.    And it is further agreed that all objections to the proceedings in partition shall be withdrawn ; that the same shall be held under advisement, —all parties agreeing that neither of them will take said property at the valuation, and that the rule to take, &c., shall be considered as answered to that extent.    The matter shall thus lie over until the Orphans' Court succeeding the regular term in November next, when if said parties find they cannot live agreeably together, the court shall grant an order to sell the premises at public sale, on the application of either of them."

On the 17th of December, Margaret and Esther Glancey, petitioned the court, averring their inability to live agreeably with Robinson and wife, and prayed the court to grant an order to Augustus A. Line, administrator of the decedent, to sell the real estate.    The court issued the order as prayed for, and on the 17th of March 1868, the administrator returned that "he did not sell on said order because on the 23d of December 1867, Lewis Robinson and Ellen his wife in right of said Ellen appealed from the order of the court to the Supreme Court."

On the 20th of May 1868, the Supreme Court affirmed the order of the Orphans' Court, and dismissed the appeal.

Margaret and Elizabeth Glancey again, September 1st 1868, petitioned the court, setting out that they could not live agreeably

with Robinson and wife, and prayed the court to issue to Line an alias order to sell. Line also, at the same time, presented a petition setting forth the affirmance of the order by the Supreme Court, and prayed for an alias order of sale. The court on the same day made the order as prayed for, sale to be held on the 9th of October. From this order an appeal was taken to the Supreme Court by Robinson and wife. On the 20th of October, Line returned that " he declined executing said order; that he finds he cannot do it without incurring the ill-will of Lewis Robinson and his wife, and he has been induced to refuse executing said order. He therefore declines having anything further to do with it." On the same day, on the petition of Margaret and Elizabeth Glancey and Elizabeth Peffer, the court issued an order to Joseph C. Thompson, who was sheriff, as trustee under the 44th section of the Act of February 24th 1834 (Pamph. L. 81, Purd. 298, pl. 154), to sell the real estate.

The terms of sale were: " A sum sufficient to pay costs and expenses, to be paid to the sheriff on the confirmation of sale; a sum sufficient to make one-half the purchase-money, with the amount paid sheriff on the 1st of April 1869, when the deed will be delivered and possession given; and the balance with interest from 1st of April 1869, payable on the 1st of April 1870, the payment to be secured by recognisance with approved security," &c. The trustee to give security in the sum of $500. To this order also an appeal was taken to the Supreme Court by Robinson and wife.

Thompson made return on the 16th of December 1868, that in pursuance of the order he had, on the 28th of November 1868, sold the property by public vendue to Margaret and Esther Glancey for $2495. On the 11th of January 1869, the sale was confirmed, upon the purchasers entering into recognisance to pay the other heirs their distributive shares according to the terms of sale theretofore fixed by the court.

From this decree of confirmation, Robinson and wife appealed to the Supreme Court, where they assigned the following errors :—

1. The court erred in awarding the order of sale to the administrator, and not requiring him to give proper notice of the time, place and terms of sale, and in directing the money to be paid to the heirs instead of the administrator for account and distribution as now required by statute.

2. The court erred in not giving notice to Robinson and wife that the administrator refused to execute an order of sale and in awarding without such notice an order to the sheriff.

3. The court erred in allowing the order of sale to sheriff after an appeal had been taken to the Supreme Court, and in fixing terms of sale improperly as follows :—

1. The order of sale is erroneous in not directing the purchase-money to be paid the sheriff for an account and distribution.

2. In fixing his bail at five hundred dollars in a property valued and appraised in the proceedings at twenty-six hundred dollars.

4. The court erred in confirming the sale made by the sheriff after an appeal had been taken to the Supreme Court.

*J. Cornman* and *W. M. Penrose* (with whom was *A. B. Sharpe*), for appellants.—The order of sale to Line should have contained directions as to advertisement, &c. : Act of March 29th 1832, §§ 52, 54, Pamph. L. 207, 208, Purd. 765, pl. 15, 290, pl. 110; Commonwealth *v.* Shuman, 6 Harris 343; Riddle's Appeal, 1 Wright 181; Act of 1832, *supra*, § 42, Pamph. L. 203, Purd. 297, pl. 149; Act of 1834, *supra*, §§ 42, 44, 45. The purchase-money should have been paid to the trustee: Act of April 11th 1863, § 1, Pamph. L. 341, Purd. 1297, pl. 1; or it should have been paid into court: Act of March 27th 1865, § 1, Pamph. L. 45, Purd. 1388, pl. 1. There was error in ordering the sale after the appeal: Hess's Appeal, 1 Watts 255; Stewart's Appeal, 6 P. F. Smith 241.

*H. Newsham* and *W. H. Miller*, for appellees.

The opinion of the court was delivered, May 24th 1869, by

Agnew, J.—A decree of sale by the Orphans' Court is definitive, and it is for this cause an appeal may be taken from it before the execution of the order to sell: Hess's Appeal, 1 Watts 255. The reason is, that the decree condemns the property to conversion, and the owner's title to divestiture. The order to the administrator, which follows, is but the process that executes the decree. It is the decree, therefore, which injures the owner. It is manifest when the decree is affirmed by the Supreme Court on an appeal, it returns to the Orphans' Court for execution simply. Hence, when the Orphans' Court made the order of sale in this case of September 1st 1868, it was but a renewal of the process under the decree which had been affirmed. It was interlocutory only, and no further final decree took place until the sale was made, returned and confirmed by the court. The estate of the appellants was legally condemned when the decree for the sale was affirmed, and no second appeal could lie from the same judicial sentence, otherwise the sale might be prevented by appeals *ad infinitum* from every order issued to the administrator in execution of the decree. The appeal of September 1st 1868 was therefore irregular. For the same reasons the appeal, after the order of October 20th 1868 to the sheriff to sell, was improper. This order was but the substitution of one person for another to execute the decree. It was also interlocutory, and no final decree upon the sale took place until it was confirmed. This appeal was premature, but the record

[Robinson's Appeal.]

being before us, we have examined it to see whether there is error in the order of sale issued to the sheriff, and find none. The appointment of the trustee fell within the sound discretion of the court. It is alleged, however, that the order was erroneous, because the deferred instalments of the purchase-money were directed to be paid directly to the heirs, and not brought into court. This is a mistake; there is no such error in the order of sale, but it simply directs the balance of purchase-money to be secured by recognisance, with approved security, which left the recognisance to be taken in due form of law. A recognisance before a decree for distribution cannot be taken for payment to the heirs directly, but should require the money to be paid into court, or at least to the administrator or trustee, to be brought into court. In the case of Brooks v. Smyser, 12 Wright 86, the legislation on this subject was examined, and it was shown that the jurisdiction over the fund arising from the sale is vested in the Orphans' Court, requiring it to be brought into court for distribution. Acts still later are confirmatory: See Act 11th April 1863, Pamph. L. 341, and Act of 27th March 1865, Pamph. L. 45. The whole system of Orphans' Court sales of real estate requires the proceeds to be made subject to the power of the court to protect the interests of creditors, and to determine the persons who are parties, and their shares of the estate in the distribution. In the present case, however, no injury can arise from the form of the recognisance, as it is not alleged there are creditors, and thirteen years having elapsed since the death of the intestate, the lien of the debts is gone, while the recognisance itself distributes the shares to the heirs in proper proportion. If any error in the distribution can be satisfactorily shown, it is still in the power of the Orphans' Court to correct it, and direct a new recognisance to be taken, with new or additional securities. The Act of 14th April 1835 requires the Supreme Court to hear and determine appeals from the Orphans' Courts as to right and justice may belong, and the Act of 16th June 1836 "to hear, try and determine the merits of such cases, and to decree according to the justice and equity thereof." There seems to be no just reason for reversing the proceedings in the Orphans' Court, and they are therefore ordered to be affirmed, and the costs of the appeals to be paid by the appellants.