In the Matter of the Dissolution of the Titusville Oil Exchange. P. T. Witherop and the Second National Bank of Titusville, Appellants.

*Equity jurisdiction—Dissolution of corporation—Distribution of assets.*

The equity power to dissolve corporations involves a further proceeding to the extent of a distribution of the assets of such corporations among those legally entitled thereto. A court of equity may therefore decree the sale both of real estate and personal property of a dissolved corporation.

*Interlocutory decree—Appeal—Order of sale not a final decree.*

No appeal lies from an order of sale of real estate of a dissolved corporation because it is not a final decree, and such an appeal improperly taken cannot act as a supersedeas. An appeal only lies to the decree confirming the sale upon a return.

Argued May 17, 1899. Appeals, Nos. 105 and 209, April T., 1899, by P. T. Witherop and the Second National Bank of Titusville, from decree of sale of December 5, 1898, and from the order of February 27, 1899, of C. P. Crawford Co., Feb. T., 1896, No. 130, confirming sale of the real and personal property of the Titusville Oil Exchange. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Appeal No. 105 quashed and the decree of the court in No. 209 affirmed. Opinion by BEEBER, J.

Petition of J. L. McKinney for the sale of the real and personal estate of the Titusville Oil Exchange, a dissolved corporation. Before THOMAS, P. J.

This case has been before the Superior Court on two other occasions, the disposal of the former appeal being reported in 2 Pa. Superior Ct. 508, and the second in 8 Pa. Superior Ct. 304, where the decree of the court dissolving the corporation was affirmed.

It appears from the record that this court having affirmed the decree of dissolution of the Titusville Oil Exchange, John L. McKinney, a stockholder of said corporation, on October 24, 1898, filed his petition in the court of common pleas of Crawford county, praying sale of the property.

On the same day an order was entered directing the issue of a rule to show cause why such sale should not be made, as prayed for, returnable November 14, 1898, on which day the hearing of the rule was continued until December 5, 1898, when the sale of the real estate and other property of the said corporation was decreed.

To the entry of this decree P. T. Witherop and the Second National Bank of Titusville, stockholders, having duly appeared, objected, and a bill of exceptions was sealed.   On December 21 an appeal was formally entered by them, the court directing that it should operate as a supersedeas upon the giving of a bond in the penalty of $1,000.   This bond was duly executed by P. T. Witherop and Louis K. Hyde, who made oath that they were worth the sum of $100,000 in unincumbered real estate, and on December 22, 1898, it was presented to and filed with the prothonotary.

On January 13, 1899, the trustee appointed by said decree of sale, offered the property of said corporation for sale at public auction, notwithstanding the allowance of said supersedeas, and it was struck off to said John L. McKinney for the sum of $19,650.

On January 16, 1899, the report of this sale was presented and filed by said trustee and confirmed nisi, said Witherop and bank objecting to such presentation and filing.

On January 24, 1899, they filed an exception to said report, which was duly argued.   On February 27, 1899, said exception was dismissed and the sale was confirmed in the following opinion of the court below:

It was very strenuously urged on the part of the exceptants upon argument that the supersedeas granted by this court on December 22, 1898, was sufficient to stop all further proceedings or action on the part of this court or the trustee appointed thereby.

Assuming this to be true, the question yet remains as to

whether or not there is a supersedeas at all, it being denied that the terms of the court were ever sufficiently complied with for that purpose, and it also being urged that notice of the supersedeas not having been served upon the trustee until he was about to make the sale, and more than twenty-one days after the appeal was taken and the supersedeas granted, such notice was not sufficient and effective to prevent the trustee from making said sale.

The appeal in this case was taken by P. T. Witherop and the Second National Bank of Titusville on the 22d day of December, 1898, and on the same day it was ordered that such appeal should " operate as a supersedeas upon the giving of a bond in the penalty of one thousand dollars in the manner prescribed by law."

Upon the same day, to wit: December 22, 1898, an instrument, in the form of a bond, signed by P. T. Witherop and Louis K. Hyde, was marked "filed" by the prothonotary.

It does not appear from the record that the said instrument, which exceptants wish us to consider as a bond, was ever approved by any person. It never was presented to the court for approval, and, conceding the fact that the bond ordered given to work a supersedeas might be approved by the prothonotary under section 5 of the act of 1897, it is frankly acknowledged that the same was not only never actually approved by the prothonotary, but was not examined or considered, either as to its sufficiency in form or security offered. And we certainly think that had this been done he would have hesitated before approving a bond which is to operate as a supersedeas, and which regularly requires a surety or sureties for that purpose, which is executed by interested parties alone, the signers being P. T. Witherop, an appellant, and Mr. Hyde, a stockholder, and the cashier of the Second National Bank of Titusville, the other appellant.

We have, therefore, an unapproved instrument in the form of an appeal bond, signed by one of the appellants, and he, who it is personally known by the officials who might approve the bond, is a stockholder and cashier of the other appellant, with no further sureties.

We refer to these facts as showing the necessity of an actual approval, and not as holding that the bond must be a perfect

one to be effective. Other means are provided to meet such an objection.

We are, therefore, of the opinion that the order of court was never sufficiently complied with to effect a supersedeas in this case, and it is unnecessary to discuss the questions raised as to whether or not the bond was in the form prescribed by law to work a supersedeas, or whether service upon the trustee within twenty-one days from the date of taking the appeal was necessary to complete said appeal and prevent sale under the order of court.

It does not appear that the property was not sold for a full and adequate price, and no exception is taken on that account, and, as a matter of fact, it sold for $5,000 more than the estimate of any of the parties at the time we were about to fix the bond of the trustee.

The exceptions are, therefore, dismissed, and the sale confirmed absolutely, as prayed for.

P. T. Witherop and the Second National Bank appealed.

*Errors assigned* were (1) in decreeing the sale of the personal estate of the dissolved corporation. (2) In confirming the sale of the real estate after a supersedeas had been granted to the decree under which the sale was made.

*George Bryan*, for appellants.—It appears from the Acts of April 20, 1874, P. L. 110, June 25, 1885, P. L. 178, and April 15, 1891, P. L. 15, that we are led to one of two conclusions, namely, first, that the legislature did not intend to provide for the sale of the personal estate of dissolved corporations; or, second, that if such was its intention, it failed to declare it, and must be presumed to have withheld the power.

The language of SHARSWOOD, C. J., speaking for the court in Dame's Appeal, 62 Pa. 417, is most apt and weighty upon the threshold of the discussion.

The authorities in point are abundant and uniform, and among them none have used more emphatic language than the courts of this state. Reference is made to the general treatises of Potter's Dwarris, Sedgwick, and Endlich, and the Am. & Eng. Ency. of Law, in loco.

Even when a court is convinced that the legislature really

meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity: Smith v. State, 66 Md. 215; The King v. Barham, 8 B. & C. 99; 15 E. C. L. 157; Everet v. Wells, 2 Scott, N. R. 525; McCluskey v. Cromwell, 11 N. Y. 593; Pittsburg v. Kalchthaler, 114 Pa. 547; Priestman v. U. S., 4 Dall. 28; Peters v. Condron, 2 S. & R. 80.

It only remains to state, what was not seriously denied upon the argument below, that if, as we contend, the appeal was perfected in manner and form contemplated by law, then the case was eo instanti transferred to this court, and all proceedings thereafter had herein in the lower court were coram non judice and void: 24 Am. & Eng. Ency. of Law, 596, and cases cited.

For this reason, objection was made in limine, not only to the confirmation nisi of the report of sale, but to the recognition by the court of its jurisdiction after appeal taken, even to permit the report of sale to be filed.

The fact that an appeal had been taken from the decree of sale was known to the public generally and announced at the sale by the trustee, who read an official copy of the order allowing the supersedeas. This was calculated to discourage bidding, intending purchasers fearing to be drawn into expensive and protracted litigation. It may well be doubted, therefore, whether the figure at which this fine property, costing in 1874 between $50,000 and $60,000, was sold to the appellee ($19,650) was of that full and adequate nature which might have been obtained at a legal judicial sale.

*Samuel Grumbine,* for John L. McKinney, appellee.—The argument of appellants is silent as to what should be done with the property, other than real estate, of a defunct corporation, but, as the power of the court to decree a sale thereof is denied, the inference to be drawn from it is, that it must be disposed of according to the rule of the common law, which gave it to the crown, and that it escheats to the commonwealth. But this is not the law.

The modern rule is that upon dissolution the personal property does not escheat to the state, but that it vests in a receiver or other trustee; and that it is to be administered by him for

the benefit of creditors and stockholders, the same as the real estate: Thompson on Corp. sec. 6746; Cook on Stockholders, sec. 641; Morawetz on Private Corp. sec. 662.

Under the chancery powers conferred upon the courts of common pleas by the Act of June 16, 1836, P. L. 789, sec. 13, said courts have supervision and control of corporations; and when there are no statutory provisions, regulating corporate matters, it becomes the duty of the courts to exercise jurisdiction in relation thereto: Titusville Oil Exchange's Dissolution, 2 Pa. Superior Ct. 508.

Did the appeal taken by appellants on December 22, 1898, operate as a supersedeas?

It will thus be seen that the prothonotary or his clerk shall fix the amount, and shall approve or reject the security offered.

The court under section 12 shall fix the terms, i. e., the condition, and upon cause shown, the court may further approve, or may require additional security or the substitution of other sureties.

Whether the amount in the first instance should be fixed by the court or the prothonotary may be immaterial, but it is certain that there should be formal approval thereof. The marking upon a paper, left with the prothonotary, the word "filed" has no significance beyond the meaning of the word.

The learned judge of the court below in his opinion demonstrated very clearly that the bond filed did not operate as a supersedeas and nothing can be added thereto to make it clearer.

As additional reason, however, for not disturbing the decree of confirmation of the sale, attention is called to the fact that no notice of the appeal from the decree of December 5, 1898, was given to the trustee appointed by the court to make the sale and distribute the fund, until January 13, 1899, the day fixed for the sale: Com. v. Kistler, 149 Pa. 345.

In the case of Roaring Brook Township Road, 140 Pa. 632, Judge ARCHBALD, of the lower court, says in the opinion filed in that case: "The writ of certiorari at common law is a supersedeas, as soon as it is received by the lower court: Patchen v. Mayor, 15 Wend. 665; Ewing v. Thompson, 43 Pa. 372; and any proceedings, thereafter taken in the case, are, as a rule, of no effect. There is a well recognized exception, however, to this rule, and that is, that where proceedings have been begun

before the writ is received, to carry out the judgment of the court, the certiorari will not stay them. Thus, where a fieri facias had begun to be executed by the sheriff, before the services of the writ, he can go on and finish it, and the court below may even award a venditioni exponas for that purpose : Charter v. Peeter, Cro. Eliz. 597 ; Blanchard v. Myers, 9 Johns. (N. Y.) 66 ; Patchin v. Mayor, 15 Wend. 665."

OPINION BY BEEBER, J., July 28, 1899 :

This is the third time that this case has been before this court. When it was here the last time the decree of the court below dissolving the corporation and approving and confirming the accounts of the directors and officers, was confirmed : Titusville Oil Exchange's Dissolution, 8 Pa. Superior Ct..304. The record was then removed to the court below, and a petition was presented, under the Act of April 15, 1891, P. L. 15, asking for an order authorizing the sale of the real estate owned by the corporation, and that such other and further proceedings might be had as were necessary for the distribution of the effects of the said corporation. A rule to show cause was granted upon this petition, and the hearing fixed for the first Monday of December, 1898. On December 5, 1898, a decree was made by the court below, directing " that the real estate and other property of said corporation be sold at public sale " after due advertisement, and appointing a trustee for the purpose of making the sale and directing him to make distribution of the proceeds of the sale, and make a deed in fee simple of all the interest of the corporation to the purchaser. On the same date P. T. Witherop and the Second National Bank of Titusville filed an exception to this decree of the court, and on the 21st of December, appealed from this decree to this court. On this latter date they secured an order from the court below allowing the appeal to operate as a supersedeas upon the giving of a bond in the sum of $1,000. On the 24th of December the certiorari from this court, returnable the third Monday of May, 1899, was filed in the court below. This is the appeal No. 105, April term, 1899. The trustee appointed to make the sale proceeded to advertise in obedience to the decree of the court, and on the 13th day of January, 1899, made a sale of the real estate owned by the corporation. On January 16, 1899, the trustee's return

of this sale of the real estate was filed and confirmed nisi. On January 24, the appellants filed their exceptions to the confirmation of the sale. On February 27 these exceptions were dismissed and the sale confirmed absolutely by the court. On the same day the appellants excepted to this dismissal of their exceptions to the confirmation of the sale, and on March 13 appealed to this court. This is the appeal, No. 209, April term, 1899. We consider all the questions raised in this case as brought before us under the appeal; No. 209.

The first assignment is that the court erred in decreeing the sale of the personal estate of the dissolved corporation. When this case was before us the first time it was shown that the 13th section of the Act of June 16, 1836, P. L. 784, gave to the court of common pleas the jurisdiction and powers of a court of chancery so far as it related to the supervision and control . . . . of corporations other than those of a municipal character: 2 Pa. Superior Ct. 508. It was there said that this act gave the courts general and unlimited equity jurisdiction over such corporations to be exercised in whatever manner courts of chancery usually act, whether by bill, injunction, petition or otherwise. It was further shown that the Act of April 9, 1856, P. L. 293, in providing for an application to the court of common pleas for a decree of dissolution must be understood as referring to the equity jurisdiction given to that court in the supervision of corporations by the act of 1836. That act, after providing for a dissolution of a corporation, and the settlement and approval of the accounts of the managers or directors, provides for the distribution of the balance of the assets of the dissolved corporation by directing that "dividends of the effects shall be made among any corporators entitled thereto, as in the accounts of assignees and trustees." Under this act and the act of 1836 conferring equity jurisdiction on the court of common pleas, we think it can no longer be doubted that courts of equity in this state have ample power to provide for the distribution of the assets of dissolved corporations. It has been expressly decided that the 13th section of the act of 1836 gave them the power to dissolve partnerships and appoint receivers for the partnership assets : Sloan v. Moore, 37 Pa. 217 ; Slemmer's App., 58 Pa. 168. The exercise of this power involves a further proceeding to the extent of a distri-

bution of these assets among those legally entitled thereto. The same principles extend to a court of equity in dealing with the assets of dissolved corporations. The distribution of assets so often depends upon the proper settlement of involved and complicated accounts that the machinery of a court of equity is peculiarly well adapted to accomplish that result. It may be conceded that the Act of April 15, 1891, P. L. 15, contemplates only an order for the sale of real estate of a dissolved corporation. The power of the court of equity to decree the sale of the personal property of this dissolved corporation does not depend upon this act at all. As we have shown, this power is derived from other sources. This assignment is overruled.

The second assignment of error is that the court erred in confirming the sale of the real estate after a supersedeas had been granted to the decree under which the sale was made. It has been earnestly argued that the order of the court of December 21, 1898, allowing the appeal from the decree of sale to operate as a supersedeas upon the giving of a bond deprived the court of the power of further proceeding in the case until that appeal was determined. Whether the fact that the prothonotary simply marked the bond given by the appellants "filed" was a compliance with section 5 of the Act of May 19, 1897, P. L. 67, providing as follows: "Except as herein otherwise provided and subject to revision by the court from which the appeal is taken, the prothonotary or clerk thereof shall fix the amount of bail and approve or reject the security offered," we need not decide, although we wish to say in passing that the prothonotary ought, in some way, to indicate whether he has approved or rejected the security. But the decision of the question raised by this assignment depends upon other considerations. The 1st section of the Act of March 17, 1845, P. L. 158, allowed appeals in any suit in equity to any person who might be affected " by any interlocutory or final order or decree . . . . upon the same terms and with the same regulations as are provided by the existing laws, in regard to appeals from any definitive sentence or decree of an orphans' court." The confusion and delay that would have arisen by allowing appeals from interlocutory decrees were so apparent to the legislature that passed this act, that it, in the same session, by the 4th section of the Act of April 16, 1845, P. L. 542,

repealed so much of the preceding act "as allows and provides for appeals from interlocutory orders or decrees of the said court of common pleas." If the decree of the court on December 5, 1891, directing a sale of the real estate was not a final decree, within the meaning of the law, there could be no appeal from it. Parties cannot have their cases reviewed piecemeal. This rule is to be applied even though the court below may mistakenly suppose that the decree entered is a final one within the meaning of the law. The question, therefore, is whether this decree is such a final or definitive one that an appeal can be taken from it. The Act of March 17, 1845, P. L. 158, quoted above, allows appeals "upon the same terms and with the same regulations as are provided by the existing laws in regard to appeals from any definitive sentence or decree of an orphans' court." Any light, therefore, that can be gathered from the decisions as to what is a final or definitive decree in an orphans' court will aid in determining this question. It is true in Hess's Appeal, 1 Watts, 255, it was clearly held that a decree of the orphans' court, ordering a sale of real estate for the payment of debts was a final one and an appeal from it was a supersedeas to such sale. This case was consistently followed for many years. The inconvenience and delay in proceedings for the sale of real estate, caused by allowing parties to appeal from a decree directing a sale, were so great that the question was again considered in Snodgrass's Appeal, 96 Pa. 420, where Hess's Appeal, supra, was clearly overruled. From that time on the rule that a decree ordering the sale of real estate for the payment of debts is not a final decree from which an appeal can be taken has been rigidly enforced. Now, the appeal must be from the decree of the court finally confirming the sale upon a return. The inconvenient results of allowing appeals from interlocutory decrees were so clearly and concisely set forth by Mr. Chief Justice THOMPSON, in Robinson v. Glancey, 69 Pa. 89, that it can be properly quoted here. Speaking of the appeal he says: "It only lies to the decree confirming the sale upon the order. This is obvious, otherwise there might be two appeals on every order. One on its being granted and the other on confirmation of the sale. This would never do. Indeed a sale might be altogether prevented, simply by appealing from orders as often as one should be granted, and holding that nothing could be done until the

appeal should be heard and determined, at which time it would generally have ceased to be effectual by lapse of time. Such an appeal does not lie, however, as decided in the above mentioned case; and although taken, it was not error to regard it as a nullity, as the learned judge did below in his decision. He decided rightly, when he held that the pendency of the appeal taken from the order of sale did not invalidate the sale made in the meantime and regularly confirmed by the orphans' court." That the writer of this opinion misunderstood the decision in the case of Robinson's Appeal, 62 Pa. 213, which he alluded to as the above mentioned case in the extract given above, was pointed out by Mr. Chief Justice SHARSWOOD in Snodgrass's Appeal, supra; but this in no degree detracts from the vigor and justice of his condemnation of the practice of allowing appeals from decrees not final. The fact is that Robinson's Appeal, supra, was the last case holding that a decree ordering the sale of real estate was a final one, and Robinson v. Glancey, supra, was the first that we have been able to find where the court refused to follow Hess's Appeal. So far as its finality is concerned we can see no difference between a decree of sale by the orphans' court for the payment of debts and the decree of sale in this case for the purpose of distributing the proceeds among those entitled as provided for by the terms of the Act of April 9, 1856, P. L. 293—neither one can be considered a final decree, and, therefore, neither can be appealed from. Appeal, No. 105, April term, 1899, is quashed. The question designed to be raised by that appeal is raised by the appeal, No. 209, in this court, and has been considered by us in disposing of the first assignment.

Holding as we do that the decree of December 5, 1898, was not such a final decree as to allow an appeal from it we affirm the decree of the court below confirming the sale of the real estate and the personal property. In No. 209 judgment is affirmed.