# Commonwealth ex rel. Insurance Commissioner v. Exchange Operators, Inc.

*David Ullman, A. B. Ross* and *John R. Geyer*, for petitioners.

*Joseph J. Brown (Beidleman & Hull* with him), for Keystone Indemnity Co., and *Henry Wessel*, for Franklin Trust Co., contra.

*Thomas J. Baldrige*, Att'y-Gen., filed an answer for Insurance Commissioner.

WICKERSHAM, J., Oct. 3, 1928.—This is a petition on the part of stockholders and creditors of Exchange Operators, Inc., and policy-holders of Automobile Insurance Exchange to vacate a judgment and decree of the Court of Common Pleas of Dauphin County on proceedings to dissolve the defendant corporation instituted by the Insurance Commissioner against the Exchange Operators, Inc., on the ground that the court was without jurisdiction of the subject-matter; and upon the further allegation that the court was imposed upon in order to have the decree entered.

Answers were filed by the Keystone Indemnity Company and the Franklin Trust Company in opposition to the petition; the Attorney-General filed an answer for the Insurance Commissioner of Pennsylvania.

The order of this court dissolving the defendant corporation was made Nov. 2, 1923. In 1925, proceedings in equity were brought in the United States District Court for the Eastern District of Pennsylvania against the Keystone Indemnity Company, certain individuals and the Franklin Trust Company, charging conspiracy and fraud in these matters, and praying for an accounting. The defendants, or certain of them, answered that the matters about which complaint was made were done under and by virtue and authority of the decree of this court, whereupon the petitioners presented their petition in August, 1926, praying for the vacation of the judgment and decree of Nov. 2, 1923. Depositions were taken before a notary public and presented to the court at the oral argument before the court *in banc.*

### History of the case.

The Exchange Operators, Inc., was a corporation organized under the Act of April 9, 1874, P. L. 293, for the purpose of "transacting a general insurance brokerage and agency business." In this capacity it acted as agent for Automobile Insurance Exchange, an unincorporated association, organized under the provisions and by authority of the Act of July 24, 1913, P. L. 977.

A reciprocal is not an insurance company, but may consist of individuals, partnerships and corporations of this Commonwealth who are authorized to exchange reciprocal or inter-insurance contracts with each other or with individuals, partnerships and corporations of other states and countries, providing indemnity among themselves from any loss which may be insured against under any provisions of the insurance laws excepting life insurance. Such contracts may be executed by an attorney, agent or other representative who is, in the insurance laws of Pennsylvania, designated "attorney," duly authorized and acting for such subscribers.

These reciprocals are under the control of the Insurance Commissioner like an insurance company. An insurance agent or broker is under the control of the Insurance Department for licensing only. After an exchange becomes insolvent, the Insurance Commissioner is authorized to proceed in the Court of Common Pleas of Dauphin County for its dissolution and winding up of its affairs, in which event the Insurance Commissioner acts as the statutory receiver (Act of May 17, 1921, § 501, *et. seq.,* P. L. 789). No such control is given over corporations organized to act as insurance agents; the liquidation of their affairs is governed by the general laws relating to corporations.

In August, 1923, the Insurance Department made an examination of the Automobile Insurance Exchange and reached the conclusion that the Exchange Operators, Inc., the attorney-in-fact or agent, owed the Automobile Insurance Exchange, the reciprocal, $112,000.

On Nov. 2, 1923, the Insurance Commissioner presented to this court his suggestion, filed in the name of the Attorney-General, the proceeding being instituted by Fred Taylor Pusey, Esq., a Special Deputy Attorney-General, wherein it was suggested:

(a) That Exchange Operators, Inc., was a corporation organized under the Insurance Company Act of 1913, and acting under the Act of 1921.

(b) That its principal place of business was in Philadelphia.

(c) That an investigation of its affairs disclosed that it was insolvent and that its further transaction of business would be hazardous to its policy-holders and to its creditors and to the public.

*(d)* That it desired to co-operate with the department in the liquidation of its property.

*(e)* That the Keystone Indemnity Company, which was also incorporated as an insurance agent and broker, would undertake to take over the assets of the Exchange Operators, Inc., and fulfill certain of its obligations, carrying all outstanding policies to termination, not, however, agreeing to assume all of its liabilities.

The suggestion prayed for an order to show cause why the Insurance Commissioner should not take possession of the property of the defendant, and why its charter should not be vacated, and for an order directing the liquidation of the business of the defendant by the Insurance Commissioner, and to approve the offer submitted by the Keystone Indemnity Company for the transfer of the assets and business to it upon its assumption of liability for claims of policy-holders and of certain creditors.

Attached to the petition was a copy of a resolution of the officers and directors of the defendant company passed at a meeting of its directors authorizing and directing the officers of the defendant to transfer all of its assets to the Insurance Commissioner or to such person as may be substituted as attorney-in-fact in its place, as the Insurance Commissioner would direct.

Upon presentation of the suggestion of the Attorney-General, a rule was granted upon the defendant, returnable on the same day, to show cause why the Insurance Commissioner should not take possession of the property, assets and business of the defendant, and to show cause why the court should not order its dissolution and the liquidation of its business, and why its property and business should not be transferred by the Insurance Commissioner to the Keystone Indemnity Company, in accordance with its proposition.

At the same time, there was presented a consent signed by the president and secretary of the defendant waiving the issuing of the rule and agreeing to the allegations of the suggestion and to the granting of the relief prayed for, whereupon, at the same time, there was entered a decree of dissolution dissolving the defendant and granting the prayers of the suggestion.

It further appeared from the suggestion that on March 1, 1919, the defendant entered into an agreement with the Franklin Trust Company of Philadelphia, under which the defendant had transferred to the trust company the sum of $100,000, the proceeds of the sale of preferred stock of the defendant of that amount, in trust, for the maintenance of a guarantee fund for the policy-holders of the Automobile Insurance Exchange, and thereafter for the benefit of the holders of the preferred stock of the defendant. The suggestion averred that the trust company held the fund and that it was liable for the payment of claims of policy-holders, and that, in addition to the taking of all of the assets of the Automobile Insurance Exchange by the Keystone Indemnity Company, the purchaser of the business of the defendant, it was proposed to have it take over this fund of $100,000, and the Insurance Commissioner prayed that he be authorized and directed to pay over this fund to the Keystone Indemnity Company upon its assuming liability for the claims of policy-holders and agreeing to carry existing policies to termination and assuming liabilities for the claims of certain of defendant's creditors.

Attached to the suggestion was the waiver of the attorney for the Franklin Trust Company of the issuance of the rule to show cause and acceptance of service on behalf of it. The court decreed that the Franklin Trust Company be directed to pay to the Insurance Commissioner the fund of $100,000, after deducting the sum of $1000 as compensation for its services as trustee. This fund of $100,000 was then directly turned over to the Keystone Indemnity Company.

In the proceedings had in this court, no attempt was made to make the preferred stockholders parties to the record, nor to give them notice of what it was proposed to do with the trust fund in which they had a reversionary interest; at least one of such stockholders is a petitioner in this proceeding.

### Discussion.

Upon the facts as we have stated them, the petitioners contend:

1. That inasmuch as the Exchange Operators, Inc., was not an insurance corporation incorporated under the Act of 1913, or any other act, as an insurance company, but incorporated under the general corporation laws to act as an insurance agent or broker, the Court of Common Pleas of Dauphin County had no jurisdiction over the subject-matter, because:

(a) It was not an insurance company; and

(b) It had no place of business nor office for the transaction of business in Dauphin County. The suggestion avers that it was organized with its place of business in Philadelphia, and that it transacted its business there, and, therefore, a decree for its dissolution and the liquidation of its affairs could be made only in Philadelphia County, and that jurisdiction of the subject-matter could not be conferred by consent.

(c) That the court had no jurisdiction of the fund in the hands of the Franklin Trust Company because of lack of notice to preferred shareholders, or either of them.

2. The petitioners ask for a vacation of the decree because of fraud perpetrated upon the court.

We will proceed to examine these several contentions urged by the petitioners. The first contention of the defendant, petitioner, is that the court had no jurisdiction to dissolve the Exchange Operators, Inc., on the suggestion presented to the court Nov. 2, 1923, for the first reason above stated.

It is provided in the Act of April 9, 1856, P. L. 293: "That it shall be lawful for any court of common pleas of the proper county to hear the petition of any corporation under the seal thereof, by and with the consent of a majority of a meeting of the corporators, duly convened, praying for permission to surrender any power contained in its charter, or for the dissolution of such corporation; and if such court shall be satisfied that the prayer of such petition may be granted without prejudice to the public welfare, or the interests of the corporators, the court may enter a decree in accordance with the prayer of the petition, whereupon such power shall cease or such corporation be dissolved. . . . Provided that the decree of said court shall not go into effect until a certified copy thereof be filed and recorded in the office of the Secretary of the Commonwealth."

The "proper county" intended by said Act of 1856 may be, at the option of any corporation praying for permission to dissolve in the way and manner in said act designated, either the county in which the principal operations of the corporations are conducted or that county in which its principal office or place of business is located: Act of April 4, 1872, P. L. 40.

In New Castle Wire Nail Co.'s Case, 18 Pa. Superior Ct. 257, it was said by President Judge Rice (page 261), the manner of dissolving a corporation is prescribed by the Act of April 9, 1856, P. L. 293.

The Act of April 9, 1856, P. L. 293, providing for applications to the Courts of Common Pleas in matters of dissolution of corporations, must be understood as referring to the equity jurisdiction given to that court by the Act of June 16, 1836, P. L. 784. It follows that the petition must be regarded as a bill and the proceedings must be held to conform to the practice in equity.

In a matter so vital to a corporation as its dissolution, it is not too much to say that the proceedings should be at least as deliberate and orderly and with as full opportunity for participation by the stockholders as on an election of officers, or on the question of an increase or reduction of capital stock or an issue of preferred stock: Titusville Oil Exchange et al. *v.* Witherop et al., 2 Pa. Superior Ct. 508, 509.

The equity power to dissolve corporations involves a further proceeding to the extent of a distribution of the assets of such corporations among those legally entitled thereto. A court of equity may, therefore, decree the sale both of real estate and personal property of a dissolved corporation: In the matter of the Dissolution of the Titusville Oil Exchange, 10 Pa. Superior Ct. 496.

The dissolution of a corporation is not a corporate act, but an act of the members of the corporation; and its officers in effecting such an arrangement act as trustees of the members, not as corporate functionaries. Under the Constitution, a majority of the members of a corporation cannot be authorized to divest the interest of a dissenting stockholder by a transfer of the whole of its property to another company, to be paid for in the shares of such other company, without first giving security for the interest of such dissenting stockholder: Lauman *v.* Lebanon Valley R. R. Co., 30 Pa. 42. See, also, opinion of Lowrie, C. J., page 46; Pottsville Bank *v.* Minersville Water Co., 211 Pa. 566.

Objections to the jurisdiction of the court are of two classes, between which there is a clear and well-defined distinction; first, those relating to the authority of the court over the subject-matter; and, secondly, those relating to its authority over the parties. Objections of the first class cannot be waived or jurisdiction obtained by acquiescence: Lewisburg Bridge Co. *v.* County of Union and County of Northumberland, 232 Pa. 255. See, also, Hazard's Estate, 253 Pa. 447, and Shambe *v.* Delaware & Hudson R. R. Co., 288 Pa. 240.

Applying the above-stated principles of law to the admitted facts, it clearly appears that the defendant was a corporation incorporated under the Act of April 29, 1874, P. L. 73, domiciled in the City of Philadelphia. It does not appear that it had an office in Dauphin County or that it had one of its principal officers who was a resident within the jurisdiction of this court. It further clearly appears that the defendant was not an insurance company, but an insurance *agent* or *broker*. Even if the contention of counsel for the Keystone Indemnity Company and the Franklin Trust Company were correct, that the proceedings were in fact against the Automobile Insurance Exchange instead of the Exchange Operators, Inc., which we do not concede, then the Insurance Commissioner did not proceed in the manner required by the Act of May 17, 1921, P. L. 789.

Section 321 of the last-mentioned act requires the insurance "commissioner shall, in case he finds the capital or reserve of the company or exchange impaired twenty per centum, give notice to the company or exchange to make good the capital or reserve within sixty days." It clearly appears from the record in this case that no such notice was given. Section 501 provides, *inter alia:* "If, upon examination or other evidence exhibited to him, the Insurance Commissioner is of opinion that any insurance company, association or exchange, or an officer or agent thereof, has violated any provisions of the insurance laws, he shall report the facts to the Attorney-General, who, under the direction of the Insurance Commissioner, shall take such legal action as the case may require." The procedure to be followed is provided in section 502. If the insurance company or exchange is found to be in a condition set

forth in headings *(a)* to *(g)*, and the Insurance Commissioner has communicated the facts to the Attorney-General, the Attorney-General *"shall,* after hearing, apply to the court of common pleas of Dauphin County, or to the court of any county in which the principal office of such . . . exchange . . . is located, for an order directing such . . . exchange . . . to show cause why its business should not be closed, *and the Insurance·Commissioner should not take possession of its‚property,* etc."

Such proceedings were not had. There was no hearing before the Attorney-General, nor, as we have before stated, was the exchange given sixty days to make good the deficit. The record shows a much shorter time was allowed. The report of the alleged deficiency in the reserve of the exchange was made by Costello to the commissioner on Sept. 13, 1923. Demand for the payment of $112,000 was made on Sept. 20th, and oral demand for transfer of the business for failure to make good this alleged deficiency was made on Sept. 29th, sixteen days after the first notice. The actual transfer was made to the Keystone Indemnity Company on Oct. 23rd, thirty-one days after the amount of the demand had been disclosed. The act provides that the Attorney-General can proceed only after he himself has held a hearing. No such hearing was held.

Section 504 of the act provides that the order to show cause, and the papers upon which the same is made in any proceeding instituted under the provisions of this act, shall be served upon the . . . exchange . . . in the manner prescribed for personal service of summons upon a domestic corporation by the laws of this Commonwealth; and upon the failure of such service, then in the manner that the court shall direct. No such proceedings were attempted. Section 505 provides: "On the return of such order to show cause, and after a full hearing before the court or before an examiner appointed by the court, the court shall" act. No hearing was held, for the reason that it appeared from the exhibits attached to the suggestion presented to the court that the proceedings were directed against the Exchange Operators, Inc.; that said corporation, by resolution of its stockholders and board of directors, had agreed that the court should make the order. It was further agreed that service of the rule need not be made and counsel for the Franklin Trust Company also waived service of the rule.

The accuracy and legality of the proceedings had by the stockholders and board of directors of the defendant corporation has been attacked. It appears from the record that at the stockholders' meeting held Sept. 29, 1923, a quorum was present. When it appeared what was the nature of the business to be transacted at the meeting, Mr. Kennedy withdrew all proxies standing in his name, aggregating $18,630 par value, and Mr. March, another petitioner, withdrew all proxies standing in his name, both of them announcing that they did so on advice of counsel. It was contended that these withdrawals left less than a quorum present, whereupon the meeting adjourned until Oct. 4th. We cannot agree with this contention. If a corporate meeting is once organized and all parties have participated, no person or faction can then, by refusing to vote or by withdrawing, thereby defeat the organization or render the subsequent proceedings invalid. The stockholders who attend the meeting and then without cause voluntarily withdraw are in no better position than those who voluntarily absent themselves in the first instance: Com. *v.* Vandegrift, 232 Pa. 53; Lutz *v.* Webster, 249 Pa. 226, 230; Stryjewski et al. *v.* Panfil et al., 269 Pa. 568.

However, it appears from the depositions that the remaining stockholders, after the withdrawal of Kennedy and March, together with the proxies which

they held, concluded there was not a quorum present, whereupon they adjourned the meeting to Oct. 4th. A minority can always adjourn; but where the by-laws of a corporation provide the date to which an adjournment can be had and the notice to be given of such adjournment, we think those by-laws must be followed, and no lawful meeting can be held at a time other than that prescribed by the by-laws of the corporation.

Section 3 of the by-laws of the defendant corporation provides:

"The holders of a majority of the stock issued shall constitute a quorum for the transaction of business at the annual meeting and at any special meeting of the stockholders.

"If no quorum be present at the time set for such meeting, an adjournment may be taken to a further date not less than ten days thereafter, and notice of such adjourned meeting *must be sent* to all stockholders."

In their haste, this by-law was overlooked and not observed. It is conceded that notice to all of the stockholders of the adjourned meeting was not given.

The stockholders had a reversionary interest in the trust fund of $100,000 held by the Franklin Trust Company. The action taken by the stockholders on Oct. 4th, authorizing the transfer of this fund to the Insurance Commissioner and by him to another corporation incorporated as an insurance agent or broker, in effect, took away from the stockholders what reversionary interest they had in this trust fund. We think such a proceeding was taking the property of the stockholders without due process of law: Home Telegraph and Telephone Co. *v.* Los Angeles, 227 U. S. 278; Fidelity and Deposit Co. *v.* Tafoya, 270 U. S. 426; National Auto Corporation *v.* Barfod, 289 Pa. 307, 310.

It is the contention of the petitioners that the notice of the stockholders' meeting to be held Sept. 29, 1923, was not sufficiently specific; that the adjourned meeting of Oct. 4th was not called and held as required by the by-laws of the defendant corporation, and, therefore, the action taken at said meeting was null and void; that at the meeting of the board of directors of the defendant corporation held Oct. 15, 1923, two of the directors filed a written protest, offered in evidence, against the proceedings theretofore had by the stockholders, and requested that their votes be registered against transferring the property of the corporation, especially the $100,000 trust fund, to the Keystone Indemnity Company, after which they withdrew from the meeting. Whereupon a *three days'* adjournment was taken, and, after two directors from distant states had been brought to the meeting, the resolution authorizing the dissolution of the defendant corporation was adopted. Of the adjourned meeting held Oct. 4th and 18th, the petitioners had no notice.

These questions are all interesting and will, we have no doubt, receive the careful consideration of the Federal Court, which court, after considering all the evidence, can do exact justice between the several parties to this litigation. We think, however, we do not need to pass upon and decide the very many contentions raised at this time. The only two questions we have before us, as we view the case, is whether we had jurisdiction of the subject-matter; and, secondly, whether the court was deceived by allegations contained in the suggestion of the Attorney-General heretofore referred to.

If we view these proceedings as an intent to dissolve the defendant corporation, we think we were without jurisdiction to act for the reasons heretofore stated, and not having any jurisdiction of the subject-matter, such jurisdiction could not be conferred by consent. If we consider these proceedings as an effort to dissolve the Automobile Insurance Exchange, we are of the opinion that the proper proceedings required by the act of assembly were not observed by the Insurance Commissioner. Certainly, the holders of

the preferred stock of the defendant corporation had a reversionary interest in the $100,000 trust fund and were entitled to notice of the proceedings transferring that trust fund to the Keystone Indemnity Company, which was not a party to the original trust. Whether this reversionary interest was substantial we cannot now tell; that will have to be determined in the Federal Court after final hearing. It does not appear from the evidence that all the holders of preferred stock of the defendant corporation had notice of the proceedings to transfer this trust fund to another party. No man shall be adjudged in person or property without notice and an opportunity to appear and be heard. Where substantial property rights are impaired, it must be predicated on notice and hearing: National Auto Corp. v. Barfod, 289 Pa. 307; Shambe v. D. & H. R. R. Co., 288 Pa. 240. We are of the opinion, therefore, that this court was without jurisdiction to make the order of Nov. 2, 1923, about which complaint is now made.

We might rest our decision at this point, but it is seriously contended by counsel for the petitioners that in the presentation of the suggestion by the Deputy Attorney-General, In re Com. ex rel. Samuel W. McCullough, Insurance Commissioner of Pennsylvania, v. Exchange Operators, Inc., the court was misled and deceived by false and inaccurate statements, and, therefore, that the order made by the court on the suggestion aforesaid was null and void and of no binding force and effect and ought to be vacated. This contention we will now proceed to examine.

It is alleged in the introductory paragraph of the suggestion of the Attorney-General that the Exchange Operators, Inc., is a corporation incorporated under the provisions of the Act of Assembly of the Commonwealth of Pennsylvania of June 27, 1913, P. L. 634; and since operating and coming under the provisions of the Act of Assembly of the Commonwealth of Pennsylvania of May 17, 1921, P. L. 682, known as the Insurance Company Law of 1921. This is not a fact; the defendant corporation was incorporated under the Act of 1874.

On the second page of said suggestion it is alleged that the defendant "has neglected and refused to observe the order of the Insurance Commissioner to make good within the time prescribed by law deficiency in its reserve required by law, the same having been impaired." The defendant company being organized under the Act of 1874 to act as an insurance agent and broker, was not required to have a reserve; nor does it appear from the evidence that the notice was given, as required by law.

It is further alleged in the same paragraph that the said defendant, after examination by the said Insurance Commissioner, was found to be in such condition that its further transaction of business would be hazardous to its policy-holders, to its creditors and to the public. The defendant did not have any policy-holders. That the defendant corporation was indebted to the Automobile Insurance Exchange is denied and contested.

It is provided in the next paragraph of the suggestion "that said examination of the Insurance Commissioner further disclosed the fact that the outstanding unsettled claims for loss of policy-holders holding policies of indemnity or insurance issued by the said Exchange Operators, Inc., amounts to upwards of $170,000. . . ." We again state, the defendant, being an insurance agent, did not have any policy-holders.

In other words, the court was led to believe by the allegations in the suggestion that the defendant was an insurance corporation and, therefore, under the supervision and regulation of the Insurance Commissioner of the Commonwealth of Pennsylvania, and, therefore, that this court had jurisdiction

of the subject-matter. It now appears that the defendant was not incorporated under the Insurance Act of 1913, and that the Insurance Commissioner was without authority to assume to control and regulate it, and was without authority to petition the court for an order for its dissolution.

Being misled by the allegations contained in the suggestion, this court, by its decree of dissolution, found as a fact that the defendant corporation was in an insolvent condition and that it neglected and refused to observe an order of the Insurance Commissioner to make good within the time prescribed by law the deficiency in its reserve required by law, the same having been impaired; that said Exchange Operators, Inc., after examination by the said Insurance Commissioner, was found to be in such condition that its further transaction of business would be hazardous to its policy-holders, to its creditors and to the public. We found as a fact that there was a hearing duly held before the Attorney-General of the Commonwealth of Pennsylvania as provided by law; no such hearing was held; nor, as we have heretofore stated, did the Insurance Commissioner proceed in the manner prescribed by the Insurance Acts of 1913 and 1921. It follows that the court was imposed upon and the order of court obtained under such misrepresentation of fact should not stand; it ought to be vacated.

The briefs of learned counsel for the Franklin Trust Company and Keystone Indemnity Company devote much space to a discussion of the question of laches in which the authorities upon that subject have been cited. Laches could not cure the lack of jurisdiction; in any event, the effect of laches upon the present controversy is properly before the Federal Court, but not before this court, since we have determined the matter on the question of jurisdiction.

It also appears from the vast amount of testimony taken that counsel for these two corporations were trying their case as though upon final hearing, having evidently in mind that this court would take into consideration the merits of their contentions. This we think we cannot do. The only question we have before us is jurisdictional, which contention we have heretofore in this opinion determined. We are of the opinion that we had not such jurisdiction. The very many interesting questions raised by counsel for the said Keystone Indemnity Company and Franklin Trust Company can properly be heard and adjudicated by the Federal Court, as we have heretofore stated.

*Decree.*—The order of this court made Nov. 2, 1923, in which the said defendant corporation was dissolved, is revoked; the costs of these proceedings to be paid by the respondents, the Keystone Indemnity Company and the Franklin Trust Company.          From Homer L. Kreider, Harrisburg, Pa.