Eleanor S. Cairns and Andrew A. Cairns, Appellants, *v.* W. H. Llewellyn and Louis Genois, Copartners, late trading as Llewellyn & Genois.

*Landlord and tenant—Lease—Covenant to renew.*

It matters not in what language a covenant to renew a lease is couched, so that the intention is reasonably apparent and the length of the new term is specified.

*Lease—Covenant to renew—Holding over, effect as to tenant's liability.*

Where a lease contains a covenant or option to renew, any holding over, even for a very short time, would give the landlord the right to elect to hold the tenant liable as a tenant for the specified term of renewal, regardless of the intention of the lessees.

*Option to renew—Holding over is notice of exercise of option.*

Holding over, by a tenant who has an option for an additional term, is notice to his landlord of his election to exercise his privilege. That actions speak louder than words is sound law, as well as proverbial wisdom.

Anything done by the tenants which has the effect of keeping the landlord out of possession, would be deemed as an exercise of the option given the former by the lease, rather than a violation of a covenant to yield up possession at the end of the term.

Argued Oct. 19, 1896. Appeal, No. 47, Nov. T., 1896, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1892, No. 409, on verdict for defendants. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit to recover rent under a written lease.

The facts sufficiently appear from the opinion of the Superior Court.

Plaintiffs' points and answers thereto were as follows:

1. In the absence of any agreement to the contrary, it is the duty of the tenant to seek the landlord for the purpose of surrendering leased property. *Answer:* Refused. [11]

2. It was the duty of the defendants to surrender the property to the plaintiffs immediately upon the expiration of the term on November 3, 1889, if they desired to terminate the ten-

ancy; and if the jury believe from the evidence, that for some-time after the 3d of November, 1889, the defendants kept upon the premises some kettles, malt and bottles, or other property belonging to them, which they subsequently moved, and that they left these things there without any agreement on the part of the plaintiffs that in so doing they would not be liable for rent, then the defendants would be liable for rent, and the verdict should be for plaintiffs. *Answer:* Refused. [12]

3. Where the tenant holds over after the expiration of a lease for a definite term, the landlord has a right to consider him as a tenant for another term under the conditions of the former lease; and the intentions or motives of the tenant in holding over can have no bearing or effect upon the right of the landlord to consider the holding over a continuation of the tenancy. *Answer:* Refused. [13]

4. It was the duty of the defendants under this lease expiring at a definite time, to wit, on November 3, 1889, to remove all their property on or before that time; and if the defendants did not so remove their property, but left the whole or part of it upon the premises after November 3, 1889, then the plaintiffs had a right to consider that defendants had exercised their option, as contained in the lease, of renewing the tenancy for a further term of three years, from the said 3d of November, 1889, and had a right to hold defendants liable for rent. *Answer:* Refused. [14]

5. Under the terms of the lease in this case, neither the defendants nor their property had any lawful right upon the premises at any time after November 3, 1889, except by permission of the plaintiffs, or by the exercise of the option given to defendants to renew the term; and if the jury believe from the evidence that property of the defendants was on the premises after that date without permission of plaintiffs, and that the defendants, or their servants were there after that date, even though for the purpose of removing the property of defendants, the defendants would be liable for the rent for the entire term, as claimed by plaintiffs, and the verdict should be for plaintiffs. *Answer:* Refused. [15]

The court charged the jury as follows:

The contract between these parties was in writing, and every

detail which was necessary to protect the rights and interests of each party was set out elaborately. The term was defined; the time it was to begin was defined, and the amount of rent payable monthly, or otherwise, and there was in addition to that a restriction that the tenant, no matter how profitable he might find it, had no right to sublet any portion of the premises in question, and in addition to that, there was a stipulation that at the expiration of the term the defendants, if they thought proper, might occupy the premises for three years more. This was a stipulation entirely in their favor; it was a stipulation which conferred no advantage or benefit upon the landlord; all that might arise from a stipulation of that kind inured to the benefit of the tenant, and he had up to the last minute of that three years a right to exercise or not to exercise that privilege which the lease gave him. Therefore, you will understand that so far as he was concerned, it was not necessary to secure his rights and secure a lease that he should enter into any arrangement or contract with the landlord. It was not necessary for him to express to them or to any one a desire to continue that tenancy, because he had a legal right to do so without regard to the landlord or without regard to any contingency whatever.

It also appears from the lease and the evidence in the case that the rental of $30.00 a month was an exceedingly profitable arrangement for the landlord, because it appears that afterwards, with the intense desire, as her counsel said, to do good to the defendant, she could not get more than 15, 18 and $20.00 a month, so that you see it was an important matter both for the landlord and tenant. So far as the tenant was concerned, it was doubtless, in his mind, a matter of interest to him to have it for three years, and even to pay $30.00 for a property which could not afterwards be rented for much more than half.

[It appears from the evidence that at the expiration of this term, on the 4th of November, he sent the money, $60.00, and the key. Now, so far as that was concerned, the minute the landlord received that money and the keys were tendered to her, from that minute the right and interest of the defendant, the tenant, ceased in those premises, no matter how profitable it might become to him to retain them, from that minute he ceased to have any legal right to retain and enjoy the premises

for a day after three years. So that you will understand that the letter, and the check and the keys indicated exactly the disposition which the tenant had in relation to his right to occupy the premises from that time onward. It is certain, if there at all, that he was there as a trespasser, and was there under no right which the lease gave him.] [1]

[It appears from the evidence of the plaintiff that during the last year of the tenancy, nearly the whole of the last year, the business or purpose for which the tenant had leased the property stopped. There was no longer any business of the kind for which the tenant had rented the premises being done upon the premises. The defendant has told you that it was about a year, and gave you the reason and explanation for his conduct during that year.

Mr. Adams, the witness for the plaintiff, says that the business establishment had ceased two or three months before, the plaintiff herself does not pretend to say that the regular business of malting or making beer, or whatever was manufactured there, was carried on at all from August until November.] [2] [You are asked to simply infer from the fact that they were on the premises, removing a portion of the property which the tenant had there, that after the month of November the business of that establishment was going on as usual and in regular order. The evidence is entirely to the contrary of that fact.] [3] There does not appear to be any evidence which would show that from August until the expiration of the term there was any business conducted upon these premises by the defendant.

[The tenant's rights ceased, as I have said, when he sent her the letter and the keys. There seems to be some mystery about the keys and the possession, but certain it is that the landlady of this property very soon after November occupied it and exercised all the rights of ownership over the property, but it does not appear in evidence at what particular time she received the keys and entered upon the premises and exercised these rights of ownership. The defendant has said, so far as that is concerned, that he sent the keys, the letter, and the money, and that was not denied by Mrs. Cairns or Dr. Cairns. They had opportunity to deny that the keys and money were sent in the letter, but they have not denied it, and both of them were examined as witnesses.] [4]

There seems to have been unnecessary stress placed upon the letter which accompanied the check, and so far as that is concerned, you would likely more readily believe that the man who wrote the letter would recollect its contents better than two people who read it six years ago.   So far as that is concerned, the witness Young said that he dictated the form of the letter. The defendant, Mr. Genois, who is a business man, and seemed to be intelligent as a witness, also testified to that.   But what was the necessity for a form of letter which simply said, " enclosed please find a check for $60.00 for rent due? "   What necessity for form was there ?   What necessity for deliberation with his friends ?   Surely any one, even if unaccustomed to business of that kind, if he desired to send a check, could easily have said, " enclosed please find check."   It needed no special form, and I refer to this fact as being corroborating to some extent of the defendant's evidence as to what was in the letter.   In the first place, he wrote it ; in the second place, he wrote it after deliberation with a friend, and after that friend had arranged the subject-matter and the contents of that letter ; and it is for you to say whether the simple statement, " enclosed please find check," required such deliberation.   And in this respect I desire to call your attention to the fact that the people who wrote both letters, including Mr. Young, who aided in the preparation of the form of the letter, but did not say that he read it, and a member of this bar who also said that he read it, had entirely forgotten every word in it.   Neither Mr. Young nor Mr. Ingram can tell you a single word in that which they both deemed an important letter, and yet you have the plaintiff and her son here swearing to every identical word in that letter.

It is for you to say, gentlemen of the jury, what importance you attach to testimony of that kind.   [It is in evidence that some of the defendant's property remained on the premises after the termination of the lease, after he had said that the lease and the term was ended.   All that I have to say about this matter is this, that where the property of a tenant remains on the premises, he has a right, at any time, to go back and take possession of his property, if the owner of the premises does not object, and simply going back for that purpose, no matter whether it occupies a day, a month, or a year, if he goes back simply to remove his property, it gives him no right, it gives

the landlord no right.] [5] The landlord has a right to refuse, after the termination of the lease, to permit the tenant to go upon the premises for any purpose, and may regard him as a trespasser. Of course, if he gives permission to enter upon the premises, that is another matter, and it neither concludes the tenant nor the landlord.

[Therefore, I say that unless you find from the evidence that the tenant remained in possession after the 4th of November peaceably and properly, as he was before, as a tenant, occupying it either as a dwelling or for business purposes, unless there is something in the evidence to show that he so occupied it, or intended to so occupy it, the fact that he was there for a month does not preclude him, and the landlord derives no advantage from that, so far as this case is concerned.] [6]

[In order to conclude that he was there in the performance of his ordinary occupation, there must be evidence to satisfy you of that, and I do not recollect any evidence in this case which would indicate that for a month before and a month after the lease expired, the tenant was pursuing his ordinary business and occupation on those premises. The evidence as to that seems to indicate that he was there for the purpose of removing his property, and if the jury so believe, then, the occupancy of the place, after that date, has no effect upon this case.] [7] In that event, [the question then arises, upon what does the plaintiff base her claim? It is based upon the conversation which she says she had with the tenant in August, and it is contended that in that conversation there was a statement or agreement to take the place for the three following years.] [8] I have already said to you that up until the end of the three years the right of the tenant to occupy it for the following three years was unquestioned, and it could not be questioned by any one, and he was not required to say anything about his desire or intention to occupy the premises after that.

[Now, what was the language exactly, upon which the plaintiff contends that this agreement was entered into? She said, in August: "Are you going to remain?" And he said: "I am going to remain after my term." Now, that is the whole of it. If I have not stated the evidence fully, counsel will correct me; but that is almost a literal statement of the conversation upon which this contract was based: "Are you going to remain

after the term?" And he said: "I am, I intend to remain." Now, gentlemen of the jury, what does that indicate? It simply indicates his intention to remain. But does it indicate a settled purpose on his part, confirmed by an agreement which binds both parties? Because you will recollect that it required an agreement which was binding upon both the tenant and the landlord to extend that lease for three years.] [9] And it is for you to say what the purpose and intent of any conversation is. Assuming that she could recollect it distinctly, are you prepared to say that that was a formal and regular agreement on his part, which bound both him and her? It is not a thing that any tenant may say a hundred times : "I intend to remain." Certainly, no one would dream of asking him to be responsible for the occupancy of the place for three years, by saying: "I intend to remain." An intention is not an agreement. It was his right not only to have an intention to remain, but he had a right to express it, and state it to any one who chose to ask him or interfere with his business, and the landlord derives no more right from a mere intent of that kind, than would a stranger who came to him and asked him if he intended to continue the business after the expiration of the three years.

In order to ascertain whether a contract, binding upon both parties, exists, you must consider the circumstances under which it arises. In this case, the tenant has denied that any such conversation ever occurred, and the landlady has sworn to just what I have said.

Now, you will consider what this was. It was an agreement if the plaintiff has a right that the tenant would be bound for $1,080, whether he could use the premises or not. In other words, it was precisely the same agreement which existed when he first entered upon the premises. Now, when these parties arranged about that they had a very formal and strict writing drawn up, in which each expressed their intention and purpose, which contained, as I have already said, a restriction that the tenant, no matter how profitable it might be to him, had no right to rent the whole or any portion of the premises to another, and when the parties entered into that arrangement, they certainly believed it to be an important matter. Now, it is contended that all that responsibility, risk, and everything else was assumed in a momentary conversation : "Do you intend to remain after the term?" And the simple answer: "I intend to remain."

Of course, it is for you to say whether, where the parties were so particular in the first instance in dealing with each other, when it came to a renewal of the responsibility, and it was precisely the same obligation, whether they would not use the same formal writing or something which would indicate a contract that was binding upon both of the parties, and one which could not be subject to misapprehension as a loose conversation could be. Why all that was necessary to make it binding upon both of the parties would be to write upon the back of the lease: "This lease is renewed." They were intelligent and both knew what they were doing, it was not even necessary to go to a lawyer, to have the contract or renewal drawn by him. All that would have been required would be to indorse upon the lease: "I agree to take within premises for three years more," or something of that kind. It is for you to say whether parties who dealt so strictly with each other in the lease, when they came to renew that lease, would not take more pains, at least take that care which was necessary to make it a binding contract. Because, after all, there is no use of a writing except that it cannot be contradicted, it remains one and the same forever. An oral contract or a conversation between parties may be varied simply as their interests call for variations of that conversation.

Gentlemen of the jury, perhaps I have said too much to you upon the subject, because it has already been fully discussed by counsel; and [all that I have to say in conclusion is that, unless you are satisfied from the evidence that the conversation related here became and was a contract between the parties, and that it was intended at the time to be such, and that at that time they were to renew the lease for three years, your verdict must be for the defendant.] [10]

Verdict for defendants. Plaintiff appealed.

*Errors assigned* were, (1–10) in portions of the charge, reciting same; (11–15) answers to plaintiffs' points, reciting same.

*A. E. Stockwell*, for appellants.

*William W. Smithers*, for appellees.

OPINION BY WICKHAM, J., November 9, 1896:
The appellants, by an agreement in writing, dated Novem-

ber 4, 1886, let, to the appellees, for the term of three years from that date, certain premises in Philadelphia, to be used as a brewery.

The dispute between the parties concerns the meaning and effect of the following covenant in the lease, viz : " It is hereby further agreed, that the said lessees shall have the privilege and option of renting the said premises for a further term of three years from the expiration of this lease." It is not immaterial to observe here that the lessees covenanted to "yield up and surrender possession of the premises " at the expiration of the term.

It is suggested in behalf of the appellees, that the covenant first above quoted is void for indefiniteness. If it stood alone this would be true, but taken in connection with the context and the situation, circumstances and evident intention of the parties, it must be regarded as a covenant to renew, that is, to give another lease containing the same terms and stipulations as the original lease, except the renewal agreement. It matters not what language is used, so that the intention is reasonably apparent. The word renew or renewal is not essential if other words conveying the same idea are employed. " Re-rent," " rent again," " privilege of another term," " refusal of the premises " and like expressions, without more, are sufficient, provided that the length of the new term is specified.

" A covenant that the lessee shall have the refusal of the premises at the expiration of the lease, for a specified term, is a covenant to renew the lease at the same rent for that term. It is violated by a refusal of the lessor to renew the lease at the same rent for that term : " Taylor Land. and Ten., sec. 332; 2 Wood. Land. and Ten. (2d ed.) sec. 413 ; Tracy v. Albany Exchange, 7 N. Y. 472; Cunningham v. Pattee, 99 Mass. 248 ; Creighton v. McKee, 7 Phila. 324.

The next question, presenting itself for consideration is, What would be the effect of a holding over by the tenants, after the expiration of the first three years ? It is conceded that under the Pennsylvania decisions the first term ended on the last moment of November 3, 1889 : Marys v. Anderson, 24 Pa. 272 Nesbit v. Godfrey et al., 155 Pa. 251. We are of the opinion that any holding over, even for a very short time, would give the landlords the right to elect to hold the appellees liable as

tenants for another term of three years, regardless of the intentions of the latter: Harding v. Seeley, 148 Pa. 20 ; Wood, Land. and Ten. (2d ed.) sec. 13 ; Kramer v. Cook, 7 Gray, 550; Montgomery v. Commissioners, 76 Ind. 362 ; s. c., 40 Am. Rep. 250 ; Kimball v. Lodge, 131 Mass. 59 ; Clarke v. Merrill, 51 N. H. 415; Conway v. Starkweather, 1 Denio, 113; Holley v. Young, 66 Me. 520; Long v. Stafford, 103 N. Y. 274 ; Delashman v. Berry, 20 Mich. 292. In the last cited case the court say, " Upon principle it would certainly seem, that the actual continuance of such occupation was the best and most conclusive evidence of the intention to continue. And as it was at his option to have the term expire at one year, or three years, and he had covenanted to deliver up possession at the end of the term, but one inference could legally and properly be drawn from such continuance after the year, to wit: that he intended to continue rightfully, according to the terms' of his lease, rather than wrongfully in defiance of its provisions." In Harding v. Seeley, supra, it is said, " That a holding over by a tenant who has an option for an additional term is notice to his landlord of his election to exercise his privilege, is generally held in this country."

A tenant under a lease like the one we are considering should be ready and willing to redeliver possession immediately on the expiration of the first period therein mentioned, unless he chooses to take the risk of liability for another term. Even if he give notice that he intends to go out at the end of his term and then does not promptly go, he must pay rent for another term: Graham v. Dempsey, 169 Pa. 460. As Mr. Justice MITCHELL remarks, in the case just cited, " That actions speak louder than words is sound law, as well as proverbial wisdom."

In the present case, if the tenants, either by writing or parol, agreed, at any time during the first term to accept a second, under the option given them, they would be bound. The acceptance being the exercise of a right conferred by the written lease, is not within the Statute of Frauds: McClelland v. Rush, 150 Pa. 57. So also, if the tenants after the 3d day of Novem ber, 1889, kept property on the premises under such circumstances or, to such an extent as induced and justified a reasonable belief that they intended to remain, or thus prevented the landlords from regaining practically full possession, such con

duct would be a holding over in the eye of the law. In brief anything done by the tenants which had the effect of keeping the landlords out of possession would be deemed as an exercise of the option given the former by the lease, rather than a violation of their covenant to yield up possession at the end of the term.

Whether or not there was a parol acceptance, in this case, of the second term, or a holding over, as alleged by the appellants, were matters for the consideration of the jury. The merely leaving some rubbish on the premises, which the appellees allege is all that remained, and which they aver was removed afterwards at the appellant's request, or indeed the leaving of something more valuable, would not necessarily prove, that the appellees were still retaining possession of the premises and keeping the appellants out. The question after all is, Were the appellants in any manner excluded? If they were not, and the appellees had not previously agreed to stay for the second period of three years there can be no recovery.

It was not incumbent on the appellees to notify the appellants that they would not accept the second term, nor were they bound to seek the appellants to surrender the property or turn over the keys of the building. The rule contended for by the appellants would often require tenants to seek their landlords in foreign countries.

It is to be regretted that the charge of the learned trial judge and his answer to one of the appellant's points are not free from error. For reasons above set forth, or suggested, the appellant's third point should have been affirmed. No one of the other four points could have been affirmed in its entirety and each was therefore properly refused. This disposes of the last five of the fifteen assignments of error.

In the language quoted from the charge, in the first and fourth assignments, the court below assumes that the keys were tendered to Mrs. Cairns. The appellants themselves conceded, at the trial, that this was not done. Again, in the last sentence of the excerpt quoted in the first assignment, the learned trial judge told the jury that if the appellants remained in possession after the first three years they were there as trespassers and not under any right given them by the lease. This instruction was erroneous. A holding over by the appellees no matter

what might be their intention in so doing would, under the circumstances shown by the evidence, be an exercise of their option.

The second and third assignments contain language from the charge which was perhaps calculated to lead the jury to think that if the appellees had ceased to use the brewery for the business for which it was rented their liability might, for that reason, also cease. The evidence in regard to this matter was admissible, as having a bearing on the question of what property was on the premises at the end of the first term. The jury should have been told, however, that such evidence should be considered for this and no other purpose. As we are in doubt as to whether the language had a greater effect, the second and third assignments are not sustained. The fifth assignment is based on language in the charge which, read in connection with the context, is not erroneous. It is not sustained. The sixth and seventh assignments are sustained for reasons suggested earlier in this opinion. If the appellees actually withheld possession, it mattered not what use they put the premises to. They might choose to keep the building locked up and unused for business purposes or as a dwelling. If they kept their property on the premises in such a way or to such an extent as to deprive the appellants of possession, they would, as hereinbefore explained, be liable for the rent. The eighth assignment is overruled. The ninth and tenth assignments are sustained. The learned trial judge was in error in assuming, as he did in the instructions quoted in the last mentioned assignments, that an exercise of the option conferred by the lease on the tenants required a new agreement. The agreement so far as the lessors were concerned was set forth in the writing. To make it effectual as to both parties, nothing more was needed than the lessees' acceptance.

Judgment reversed and venire facias de novo awarded.