National Biscuit Company *v.* Baehr Brothers,
Appellant.

Argued March 19, 1964.   Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Gerald J. Haas,* with him *John S. Bernheimer,* for appellant.

*Robert S. Ryan,* with him *Drinker, Biddle & Reath,* for appellee.

OPINION BY ERVIN, J., April 14, 1964:

The only question raised by this appeal is whether the landlord or the tenant is responsible for repairing certain incinerators. Plaintiff, National Biscuit Company (N.B.C.), seeks to recover the cost of replacing incinerators at each of three warehouses built and leased by the defendant, Baehr Brothers (Baehr), for the specific use of N.B.C. The three warehouses were built by Baehr and leased to N.B.C. by three written leases executed in November 1954. The leases were prepared by N.B.C. and were the same for about 250 buildings leased by N.B.C. from various landlords. It was agreed that as of January 1959 all of the incinerators were in such condition that they had to be extensively repaired and, since the cost of repairs would have exceeded the cost of installing new incinerators, the parties agreed that new incinerators should be installed and further agreed that the cost of installing each incinerator was $1,188.00 and for the three incinerators totalled $3,564.00. N.B.C. installed the three new incinerators and sued Baehr in an action in assumpsit for the recovery of the cost of making the

three installations. The court below directed a verdict for N.B.C. and Baehr, after the dismissal of its motions for judgment n.o.v. and new trial, took this appeal.

The pertinent provisions of the leases relating to the repair obligations of the parties are: "9. The Lessor covenants and agrees during the continuance of this lease to keep the exterior of the building painted so that it shall at all times present an attractive appearance and to make and do all exterior repairs (except landscape planting which Lessee agrees to maintain) and all repairs of a permanent character and all repairs, additions or alterations which may at any time be required by Fire Underwriters, Public Utility Companies or Municipal or State Authority and all foundation or structural strengthening, alterations, reconstruction or additions necessitated by reason of defects or weakness, or by reason of building operations upon adjacent premises. If repairs which are the responsibility of the Lessor, as outlined herein, are not made within a reasonable time by Lessor after notice, Lessee may have said repairs made in a good workmanlike manner at reasonable prices and deduct such expenditures from the rental next becoming due under the terms of this lease.

"10. The Lessee covenants and agrees during the continuance of this lease to maintain landscape planting and to make all ordinary interior repairs and it is hereby agreed that any single repair job, the reasonable cost of which is $100.00 or over and which is not clearly an ordinary interior repair as distinguished from a structural repair or a repair of a permanent character, shall be considered a repair of a permanent character under the terms of this lease. Lessee agrees to make all repairs whatsoever on the demised premises made necessary by the negligence, carelessness, misconduct, or fault of the Lessee or its agents, licensees or invitees."

From the above it will be noted that paragraph 9 requires the lessor (Baehr) to do all exterior repairs and repairs of a permanent character. Paragraph 10 requires the lessee (N.B.C.) to do all interior repairs but further provides that if a single repair job costs $100.00 or more and is not clearly an ordinary interior repair as distinguished from a structural repair or a repair of a permanent character, this repair shall be considered a repair of a permanent character, which, under paragraph 9, would be the lessor's responsibility.

The only question for decision is the interpretation of the written leases. The lessor (Baehr) argues that the leases are ambiguous and that a reasonable interpretation would limit its liability to repairs to the building proper and not to fixtures such as incinerators. On the other hand, the plaintiff (N.B.C.) argues that the incinerators were "of a permanent character" and therefore the responsibility of the lessor, and if there is any doubt about this fact, paragraph 10 resolves the doubt against the lessor because the cost of each of the three units was well in excess of $100.00. It also argues that the only relevant distinction in paragraphs 9 and 10 of the lease is that between work which is "ordinary" and that which is "of a permanent character," a distinction which can be applied just as easily to incinerators as to buildings.

It is hornbook law that where the terms of a lease are not ambiguous, interpretation and construction of the contract are questions for the court: *Diamond v. Drucker,* 177 Pa. Superior Ct. 226, 110 A. 2d 820. The court's function is to determine the intention of the parties from the language used: *Paull v. Pivar,* 161 Pa. Superior Ct. 233, 53 A. 2d 826.

In construing a contract, words must be given their ordinary meaning: *Paull v. Pivar,* supra; *Diamond v. Drucker,* supra.

We agree with the interpretation placed upon these leases by the court below. We think it is clear that the repair here involved was one of a permanent character and that if there was any doubt about this question, the $100.00 provision of paragraph 10 requires that it be treated as a repair of a permanent character, the responsibility for which rested upon the lessor.

Baehr argues that the words "as distinguished from" indicate that the $100.00 rule was not intended to relate to all repairs. Paragraphs 9 and 10 cover work other than (1) ordinary interior repairs, (2) structural work or (3) repairs of a permanent character, and the phrase "as distinguished from" simply expresses the idea that the $100.00 rule is not applicable to these. Accordingly, landscape planning is the responsibility of N.B.C. whether or not the cost exceeds $100.00 because landscape planning is not within the scope of the $100.00 rule. Similarly, an addition required by an underwriter is the responsibility of Baehr even though the cost may be less than $100.00, for the repairs required by underwriters are not within the $100.00 rule. However, it is clear that the $100.00 rule is intended to cover disputes involving the question whether a job is an "ordinary interior repair" as distinguished from a structural repair or work "of a permanent character."

Baehr also argues that paragraph 4 of the lease provides that "trade and office fixtures, machinery and equipment" may be removed by the tenant at or before the termination of the lease. It further argues that the interpretation of the court below would obligate Baehr to pay for repairs to machinery which N.B.C. could remove at the end of the lease. The answer to this argument is that paragraph 4 of the lease provides that N.B.C. may remove only equipment which it placed on the property and that equipment placed on the property by Baehr may not be removed.

Baehr also argues that the repair clauses are applicable to "premises and buildings" and not to "fixtures." The lease covers all improvements made by Baehr and N.B.C. has paid and is paying rent on the basis of a cost figure which includes the cost of the incinerators. If Baehr is right in this argument, N.B.C. would be compelled to pay for the new incinerators and at the same time would remain obligated to pay rent on the basis of a cost figure which includes the cost of the original incinerators. We do not believe that the parties intended any such result. The only relevant distinction in paragraphs 9 and 10 of the lease is that between work which is "ordinary interior work" and that which is "of a permanent character," a distinction which can be applied just as easily to incinerators as to buildings.

Judgment affirmed.