421 A.2d 1120

**Anthony J. CUSAMANO, Appellant,**

v.

**ANTHONY M. DiLUCIA, INC.**

Superior Court of Pennsylvania.

Argued June 13, 1979.

Filed Sept. 26, 1980.

Ronald I. Rosenstein, Norristown, for appellant.

Frederick M. Wentz, Norristown, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

Appellant ("Landlord") entered into a lease agreement with Appellee ("Tenant"), leasing to the Tenant a suite of offices in Norristown, Pennsylvania, for a term of two years, commencing June 1, 1972, and expiring May 31, 1974, at the annual rental of $3,600, payable in monthly installments of $300.

The lease, prepared by the Landlord, was a printed form lease. At the request of the Tenant, the Landlord inserted by typewriter an option clause in a blank space beneath paragraph 4 of the form, containing the following language:

---

* President Judge JOHN Q. STRANAHAN, of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN, of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

"It is further understood and agreed that the Lessee will have an option to continue renting for an additional one year at Three Hundred ($300.00) per month with a 60 day notice to terminate by either party.

Upon expiration of above clause, Lessor will continue said Lease on a month to month basis at the monthly rental of Three Hundred Fifty ($350.00) Dollars per month until terminated by either party."

The lease contained no indication of the means by which the Tenant might exercise the option to renew.

Paragraph 24 of the printed form provided in part:

"It is hereby mutually agreed that either party hereto may determine this lease at the end of said term by giving to the other party written notice thereof at least 60 days prior thereto, but in default of such notice, this lease shall continue upon the same terms and conditions in force immediately prior to the expiration of the term hereof as are herein contained for a further period of _____ and so on from month to month unless or until terminated by either party hereto, giving the other 60 days written notice for removal previous to expiration of the then current term..."

The Tenant went into possession under the lease and remained upon the premises until September 23, 1974, nearly four months beyond the expiration of the original term.

By letter dated August 21, 1974, the Tenant caused the following notice to be delivered to the Landlord:

"In accordance with the terms of the lease, this is to hereby notify you that we will be terminating on September 23, 1974. This is in accordance and fulfills the month to month basis for notification as stipulated in the lease."

The Tenant continued to pay and the Landlord accepted monthly rental in the sum of $300 for the months of June, July, August, and apparently September, 1974.

Shortly after the Tenant vacated the premises, the Landlord confessed judgment by complaint against the Tenant for the sum, inter alia, of $3,600 in rent.

By stipulation, the matter was submitted to arbitration, and thereafter, was tried before the lower court sitting without a jury. Following trial, the court filed a decision awarding the Landlord the sum of $300 as rental, on the theory that the Tenant "held over" under the terms of Paragraph 24 of the lease and was thus required to give 60 days' notice of its intention to vacate. As the Tenant endeavored to vacate upon only 30 days' notice, the court reasoned, the Landlord was entitled to a further month's rental.

On appeal, the Landlord contends, as he did below, that by remaining in possession of the premises beyond the original term of the lease, without notice, the Tenant thereby exercised the option to renew the lease for an additional one year term as set forth in Paragraph 4 of the lease. The Landlord thus seeks additional rental at the rate of $300 per month for the months of October, 1974 through June, 1975.

The Tenant, to the contrary, asserts and the lower court agreed that it held over pursuant to Paragraph 24 of the lease, and was thus a tenant from month to month upon the expiration of the original term. The Tenant thus asserts that it is only liable to the Landlord in the sum of $300, representing rental for the month of October, 1974, and due by reason of its having given only 30 days' written notice of its intention to vacate.

The lower court, in an opinion written in support of its decision, sets forth its rationale thusly:

"The basis of the Court's decision that the occupancy by defendant [Tenant] of the subject premises after May 31, 1974, was not pursuant to an inferred exercise of the option, but rather as a continuation of occupancy under paragraph 24, arose from its conclusion that the language set forth in paragraph 24 of the lease; viz., 'It is hereby mutually agreed that either party hereto may determine this lease at the end of *said term* . . .' (emphasis supplied) could as easily have applied to the two–year term identified as the 'term' in paragraph three of the lease as it could to the one–year option term set forth under the

designation 'Minimum Rent' at paragraph four of the lease. Accordingly, by reason of this ambiguity, and inasmuch as plaintiff [Landlord] had prepared the lease, the Court construed the agreement against the party responsible for the ambiguity." R. 30–31

As is thus apparent, the lower court determined that the phrase ". . . end of the *said term* . . ." [1] (emphasis in original) was ambiguous, and then resolved the ambiguity against the Landlord, the party that prepared the lease.

■ We begin with the observation that leases are in the nature of contracts and are thus controlled by principles of contract law, including the well settled rules of interpretation and construction. *Pugh v. Holmes*, 253 Pa.Super. 76, 384 A.2d 1234 (1978), affirmed as modified, 486 Pa. 272, 405 A.2d 897 (1979). As in the case of other written contracts, the purpose in interpreting a lease is to ascertain the intention of the parties, and such intention is to be gleaned from the language of the lease. *National Biscuit Co. v. Baehr Bros.*, 203 Pa.Super. 133, 199 A.2d 494 (1964). Such intention is not to be determined merely by reference to a single word or phrase, but rather by giving every part of the document its fair and legitimate meaning. *Boyd v. Shell Oil Co.*, 454 Pa. 374, 377, 311 A.2d 616, 618–19 (1973); *Friestad v. Travelers Indemnity Co.*, 260 Pa.Super. 178, 393 A.2d 1212 (1978).

■ Where the terms of a lease are not ambiguous, the interpretation and construction are for the court, and the court must determine the intention of the parties from the language of the lease alone. *National Biscuit Co. v. Baehr Bros.*, supra.

1. See *Sloan v. Longcope*, 288 Pa. 196, 135 A. 717 (1927) and *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587 (1925), both construing similiar language, the latter case holding that an option to purchase given during the "term" of the lease could be exercised only during the original term and not during any renewal thereof.

■ When an ambiguity does appear, however,[2] or when doubt arises as the result of uncertainty concerning the meaning of language used in a lease, its provisions will be construed most strongly against the party that drafted the lease. *Burns Mfg. Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976); *West Penn Realty Co. v. Acme Markets, Inc.*, 224 Pa.Super. 202, 303 A.2d 836 (1973).[3]

It is of course the latter rule upon which both the lower court and the Tenant rely. In our approach to the question before us, however, we are mindful of the admonition of Justice Pomeroy, set forth in *Burns Mfg. Co. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976):

"... the rule is not intended as a talismanic solution to the construction of ambiguous language. Rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of the parties to an instrument. They are not meant to be applied as a substitute for that quest... It is only when such an inquiry fails to clarify the ambiguity that the rule of construction relied upon by the chancellor should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document..." *Id.*, 467 Pa. at 313 n. 3, 356 A.2d at 766, n. 3

Positing for the moment that an ambiguity exists either between Paragraphs 4 and 24 of the lease, or in Paragraph 24 itself, and guided by the admonition of *Burns*, our diligent search of the trial record fails to assist us in determin-

**2.** We recently noted that in order for us to find an ambiguity in a contract, we must find that the document is reasonably subject to two different interpretations. *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 258–259, 404 A.2d 398, 401 (1978).

**3.** The parties appear to recognize that this rule of construction has no application when construing an option. "When contracts are optional in respect to one party, they are strictly interpreted in favor of the party bound and against the party that is not bound..." *West Penn Realty Co. v. Acme Markets, Inc.*, 224 Pa.Super. 202, 205, 303 A.2d 836, 837 (1973), quoting *McArthur v. Rosenbaum Co. of Pittsburgh*, 180 F.2d 617 (3d Cir. 1950) and 3 *Williston on Contracts*, Sec. 620, p. 1788.

ing the intention of the parties.[4] We may, nevertheless, resolve the question by application of two rules of construction not alluded to in the opinion of the lower court or in the briefs of counsel.

We first note that Paragraph 3 of the lease grants the Tenant an initial term of two years. The option typed in Paragraph 4 provides that upon expiration of the initial term granted by Paragraph 3, the Tenant may renew for an additional term of one year, at the same rental. Paragraph 4 further provides that upon 60 days' notice, the Tenant may terminate at the expiration of the renewal term, and if it does not, the lease continues upon a month–to–month basis, at an increased rental, until terminated by either party.

It is thus apparent that except for the method by which the Tenant may terminate at the expiration of the original two–year term,[5] and the method by which the Tenant may exercise the option to renew, Paragraphs 3 and 4 in combination explicitly consider the entire subject.

█ In such circumstances, a familiar rule of construction provides that the particular provisions of Paragraphs 3 and 4 "will be regarded as qualifying or controlling any different interpretations one may derive from the more general provisions of the lease." *Kline v. Marianne Germantown Corp.*, 438 Pa. 41, 45, 263 A.2d 362, 364 (1970); *Minnotte Appeal*, 411 Pa. 492, 192 A.2d 394 (1963); *Philadelphia v. Philadelphia Transportation Co.*, 345 Pa. 244, 26 A.2d 909 (1942). It

4. Nearly all of the testimony at trial was directed at the question of whether the Landlord was entitled to recover upon his claim for damage to the leasehold. Those sporadic references to the circumstances surrounding the execution of the lease that do appear in the record shed no light upon the intention of the parties beyond the fact that both intended that the option, as it appears in Paragraph 4 of the lease, be included in the instrument. There was no testimony whatever upon the questions of why Paragraph 24 was in part completed or what the parties intended in doing so.

5. Although we are not called upon to decide the question, presumably the provisions of Paragraph 24 would require the Tenant to notify the Landlord at least 60 days prior to the expiration of the original term if it desired to terminate. The lower court, although it found an ambiguity in Paragraph 24, implicitly, found that the Tenant was required to adhere to the 60–day notice requirement of Paragraph 24.

will also be recalled that a "clear" provision controls a doubtful one, and a general provision must give way to a specific provision covering the same subject matter. *Harrity v. Continental–Equitable Title and Trust Co.*, 280 Pa. 237, 124 A.2d 493 (1924).

■ We note again that the option was inserted in its entirety in the lease by typewriter, while Paragraph 24, with the exception of the several completed blank spaces with typed insertions, is a part of the printed form.[6] In such case we apply the rule of construction which provides that where written and printed portions of a contract are repugnant to each other, the printed form must give way to the written clauses of the instrument, as the latter are presumed to be the deliberate expression of the true intent of the parties. *Mailey v. Rubin*, 388 Pa. 75, 130 A.2d 182 (1957); *Onofrey v. Wolliver*, 351 Pa. 18, 40 A.2d 35 (1944); *Commonwealth v. Friedman*, 121 Pa.Super. 591, 184 A. 672 (1936); 8 *P.L.E.* Contracts § 160; 1 *Stern's Trickett on the Law of Landlord and Tenant*, § 30 at p. 34 (Rev. 3d ed. 1973).

■ We therefore find that the provisions of Paragraph 4, as typed on the lease, set forth the true intention of the parties, and insofar as the same are inconsistent with Paragraph 24, are controlling. The question we must then address is whether the Tenant exercised the option contained in Paragraph 4.

At trial, the Tenant by its president, testified that it did not exercise the option contained in Paragraph 4 (N.T. 32–33). In addition, Paragraph 25 of the lease, sets forth in general terms the method by which each party was to give written notice to the other when required by the lease.[7] The

6. The words "end of said term", found ambiguous by the lower court, are printed as well.

7. Paragraph 25, printed upon the form, provides the following, in its entirety:

"All notices required to be given by Lessor to Lessee shall be sufficiently given by leaving the same upon the demised premises, but notices given by Lessee to Lessor must be given by registered mail, and as against Lessor the only admissible evidence that

Tenant argued to the lower court, and orally here, that as it did not notify the Landlord of its intention to renew under the option in accordance with the requirements of Paragraph 25, such absence of notice is further evidence supporting the contention that the Tenant did not exercise the option to renew.

■ The argument, however, overlooks a fundamental principle applicable to options to renew or extend a lease. It will be recalled that although the original term of the lease expired on May 31, 1974, the Tenant remained in possession of the premises until September 21, 1974. When a lease provides that the Tenant may occupy the leasehold premises for an extended term as specified in the lease, the mere act of holding over constitutes an election by the Tenant to hold for the additional term, regardless of the intention of the Tenant.

For more than a century, in Pennsylvania, the very act of holding over has been considered to constitute "notice" by a tenant to the landlord of the election to exercise an option for an additional term. *Sloan v. Longcope,* supra; *Canonico v. Lucente,* 40 Pa.Super. 75 (1909); *Lipper v. Bouve,* 6 Pa.Super. 452, 41 W.N.C. 566 (1897); *Cairns v. Llewellyn,* 2 Pa.Super. 599, 39 W.N.C. 251 (1896); 21 *P.L.E.* Landlord and Tenant § 120; *Stern's Trickett on the Law of Landlord and Tenant,* §§ 355–57,[8] and as we have said, this rule pertains without regard to a contrary intention on the part of the Tenant. For example, in *Adams v. Dunn,* 64 Pa.Super. 303 (1916), the tenants leased the premises for a term of one year, expiring at midnight of March 1st. The tenants held over and continued to occupy the premises during March 2nd. The lower court found that the act of holding over on March 2nd, the first day of a new yearly term, resulted in a renewal of the lease for a further year. On appeal, the tenants contended that their holding over was under a

notice has been given by Lessee shall be a registry return receipt signed by Lessor or his agent." R. 9

8. See, to the same effect, *Restatement, Property* 2d, § 14.4 and comment f.

mistake of law as to the time when the first term expired, and that they intended to vacate at the expiration of the first term.

Affirming the entry of judgment for rent for the entire second year, we said:

"This was not a case in which, by the terms of the original lease, the Lessee was given the option to renew the same on condition that his election so to do should be evidenced by a written notice a period of time in advance of the end of the term. And so it was held in *Murtland v. English*, 214 Pa. 325 [63 A. 882], that no notice of such an election having been given, as provided in the lease, the mere holding over could not be conclusive on the landlord; because the Lessee had not done what was required to bind himself by the exercise of the conditional option given him. There is nothing in that case to infringe upon the long established doctrine that where a tenant, after the expiration of his term, holds over with the acquiescence of the landlord, the lease will be considered renewed for another term. In *Graham v. Dempsey*, 169 Pa. 460 [32 A. 408], we quote the syllabus: 'A tenant cannot escape liability for the rent of another term by giving notice that he is going out at the end of this year and then not going.' To that statement of the law Mr. Justice MITCHELL adds: 'That actions speak louder than words is sound law as well as proverbial wisdom.' To the same effect is *McBrier v. Marshall*, 126 Pa. 390 [17 A. 647]."

So it is at bar, and thus we find that by the act of holding over for a period of nearly four months, the Tenant exercised the option to renew the lease for an additional period of one year.

Paragraph 4, which we have found to be controlling, does not require that the Tenant notify the Landlord of his intention to exercise the option to renew. Paragraph 25, relating to notices by the Tenant to the Landlord provides ". . . notices given by Lessee to Lessor must be given by registered mail . . ." The paragraph obviously does not require that the Tenant give any specific notice, but merely indicates how notices that are required to be given by the

lease shall be given. Paragraph 25 thus has no application to Paragraph 4.

The record indicates that the Landlord has received monthly installments of rental for the first four months of the renewal term. We accordingly remand the case to the lower court with directions to enter judgment in favor of Appellant–Landlord and against the Appellee–Tenant in the sum representing the balance of rental due for the remaining eight months of the renewal term. *Adams v. Dunn,* supra.[9]

Reversed.

---

**9.** There is no evidence in the record below that the Landlord accepted the Tenant's surrender of the premises on September 24, 1974. The record does reveal, however, that following the tenant's surrender, the Landlord endeavored without success to rent the premises. Such act was in the interest and for the benefit of the Tenant however, and does not discharge the Tenant from his obligation to pay rent for the balance of the term. *Wilson Laundry Co. v. Joos,* 200 Pa.Super. 595, 189 A.2d 917 (1963). And see *Restatement, Property* 2d, § 12.1(3) and Comment i. As the record thus reveals an effort on the part of the Landlord to mitigate the Tenant's damages by endeavoring to relet, and as the issue is not before us, we need not consider the question of whether modern Pennsylvania jurisprudence recognizes a duty on the part of a Landlord to mitigate the damages recoverable from a Tenant who abandons or fails to occupy leasehold premises. See *Ralph v. Deiley,* 293 Pa. 90, 141 A. 640, 61 A.L.R. 763 (1928), and 21 A.L.R.3d 534 (1968).