## Blanchard v. DiNardo

*David Kraut*, for plaintiff.
*Howard Gershman*, for defendant.

RUFE, *J.*, February 26, 1988 — In this assumpsit action, heard by the undersigned without a jury, plaintiff landlord sues for the balance of the rent due on his release agreement with defendant after defendant voluntarily vacated the rented property approximately thirty-one months before the end of the lease term. Defendant counters that not only did plaintiff fail to mitigate defendant's damages by securing a new tenant for the property, but plaintiff frustrated defendant's attempts to mitigate those damages and discouraged new tenants from leasing the premises by insisting on a new rental figure 25 percent higher than defendant was obligated to pay and at least that much higher than the going commercial rental rate in the surrounding area. After hearing, we enter the following findings of fact.

## FINDINGS OF FACT

(1) On May 15, 1981, defendant executed a lease as tenant with plaintiff as landlord for premises of approximately 2,400 square feet of commercial space in the Chalfont Village Shopping Center, 239 Butler Pike, New Britain Township, Bucks County.

(2) Pursuant to the lease, defendant exercised an option in 1984 to extend the term of the lease through May, 1987, at a minimum rental of $1,151.05 per month, or $6.50 per square foot. The parties also stipulated that the lease provides for an attorney's fee of five percent of the amount due plaintiff.

(3) At all times relevant, Joseph Schwartz & Co. was the rental and managing agent of plaintiff for Chalfont Village. Mr. Schwartz receives five percent of gross rentals as a management fee and six percent of the monthly rental procured.

(4) In the summer of 1984, defendant notified Mr. Schwartz of his intention to vacate the premises.

(5) Defendant vacated the premises on or about September 15, 1984.

(6) Defendant paid all rental charges through November 1984; plaintiff is still holding a $1,770 security deposit paid by defendant.

(7) The premises were relet to Chalfont Karate Inc., pursuant to a lease dated March 3, 1986. The Chalfont Karate lease is for the entire store for $8.54 per square foot per month for the first year and $9.54 per square foot per month for the second year. Because the first 75 days were rent free, the total for the entire term is $6.77 per square foot per month.

(8) Defendant suggested to Mr. Schwartz that for a period of time he would make up any difference between the $6.50 per square foot due under the lease and any lesser amount a new tenant might pay so that the plaintiff would mitigate any harm. Mr. Schwartz acknowledged this offer.

(9) Defendant made substantial efforts, including placement of newspaper advertisements, and engagement of a broker to find a new tenant, directing all of the numerous inquiries, including Chalfont Karate, to Mr. Schwartz.

(10) After defendant vacated the premises, Mr. Schwartz asked $8.00 per square foot for rental of the premises. Such high rental fee discouraged potential tenants.

(11) As determined by William D. Pugliese, defendant's expert estate appraisal witness, the fair rental value of the premises as of January 1, 1985, was $6.50 per square foot.

(12) At the time the premises were vacant, the Chalfont Center had the only available commercial space in the Chalfont area.

(13) Mr. Schwartz admitted that outside factors such as road construction in the area and poor visibility of the store from the road contributed to the difficulty in reletting the property. Notwithstanding these factors, Mr. Schwartz maintained his asking price of $8.00 per square foot.

(14) Mr. Schwartz's insistence upon the $8.00 per square foot included telling potential tenants to pay only $1.50 per square foot, during which time the defendant would continue to pay the remaining $6.50.

(15) Although the store was substantially clean when the defendant left, Mr. Schwartz spent $2,200 to clean and renovate the store for the new tenants.

(16) Defendant continued paying the utility bills for the premises through February, 1985. The electric bill for March, 1985, was not paid by defendant because Mr. DiNardo returned to the store in March and found that the thermostat had been turned up from 60-62 degrees to 80 degrees. Since the rental agents were the only other people with access to the building, we find that they are responsible for changing the thermostat.

(17) Six months is a reasonable time for commercial space such as Chalfont Village to be vacant.

(18) $8.00 per square foot is substantially higher than any other rental frees paid in Chalfont Village.

(19) Plaintiff did not prove that defendant owed common area maintenance for 1983, or any back real estate taxes.

## DISCUSSION AND LAW

Plaintiff seeks damages for the defendant's breach of the rental agreement. Defendant avers that the plaintiff has a duty to mitigate his damages, and has not done so.

The law in Pennsylvania on the landlord's duty to mitigage damages is not clear. In 1882, the Supreme Court held that a landlord does not have a duty to mitigate damages by reletting property after a tenant's breach. *Auer v. Penn,* 99 Pa. 370, 44 Atl. 114 (1882). This principle was upheld in *Ralph v. Deiley,* 293 Pa. 90, 141 Atl. 640 (1928), where the court decided that a landlord could permit the premises to become idle and recover for the balance of the entire term. *Id.* The *Deiley* court did add, in dicta, however, that the landlord should be reasonably diligent in securing a desirable tenant. *Id.* at 643. Since 1928, the Supreme Court has not addressed this issue. Modern commentary has suggested upholding the ancient principle, in the absence of any other law. See Sum. Pa. Jr. Landlord & Tenant §551 (1978), which states that a landlord has no duty to relet premises to minimize tenant's liability. *Id.*

The Superior Court, in recent years, has only indirectly discussed mitigation of damages by a landlord. *Brill v. Haifitz,* 158 Pa. Super. 158, 44 A.2d 311 (1945); *Cusamano v. Anthony M. DiLucia,* 281 Pa. Super. 8, 421 A.2d 1120 (1980). In *Brill,* where the tenant breached and failed to occupy the premises, the court merely hinted at a duty of mitigation.

"She [the landlord] carried out *her duty* of doing what she could to minimize damages by putting up a "for rent" sign and advertising for a tenant in the newspaper." *Brill, supra.* (emphasis supplied)

In *Cusamano, supra,* since the landlord made an effort to relet the premises, the court declined to decide "whether modern Pennsylvania jurisprudence recognizes a duty to mitigate the damages recoverable from a tenant who abandons or fails to occupy a leasehold premises." *Id.* at 19, 44 A.2d at 1125.

Lower courts have not been in complete agreement on the mitigation issue. In a Berks County case, *Brumbach v. Kauffman Carpet Co.*, 67 Berks 18 (1972), the court held that the defendant was entitled to mitigation of damages where the plaintiff leased space to the defendant for storage of carpets, and the defendant was to occupy the premises for five years, beginning eight months after the signing of the lease. The defendant never occupied the premises, and the court held that the landlord had a duty to make reasonable efforts to mitigate damages (following the suggestion of *Ralph v. Deiley, supra*). *Id.*

Montgomery County has not followed the *Deiley* dicta. In *West Norriton Industrial Park v. Snappy Car Rental Inc.*, 118 Montg. 73 (1986), the court ruled that as a matter of law, a commercial landlord is not under a duty to mitigate damages upon the tenant's breach (tenant vacated the store). *Id.*

The common law of Pennsylvania concerning mitigation of damages is cloudy, yet remains unaltered by any appellate court. We must, therefore, hold that plaintiff did not have a legal duty to mitigate damages. Absence of a duty to mitigate, however, does not give the plaintiff, through its rental agent, Mr. Schwartz, license to discourage or prevent a minimization of losses. Mr. Schwartz actively deterred potential tenants (some of whom were referred by defendant) by insisting on a price that was 25 percent greater than the fair rental value, and substantially higher than other rentals in the same shopping center. Such actions only served to increase the losses sustained by plaintiff, since the property remained empty for much longer than reasonably necessary.

Defendant breached its lease, yet made a sincere effort to help relet the property. Accordingly, taking

all factors into account, defendant is to be held responsible for the rent and other itemized costs for six months from the time the property was vacated. Given testimony concerning market conditions that existed at the time the property was vacated, six months is a fair and reasonable amount of time for the plaintiff to have found a new tenant. Since any further losses suffered by the plaintiff directly resulted from its own quest for unreasonably high rent, such losses remain uncompensated. Damages in the amount of $5,961.72 (itemized as follows) are hereby awarded to plaintiff.

## ITEMIZED LIST OF DAMAGES

(1) Rent
September 15, 1984 — March 15, 1985 less rent paid through November 15, 1984      $ 4,604.20

(2) Electric
Paid through February, 1985, plus electric for March (P-3 lists electric for September 5, 1984 through December 10, 1985, as $251.92. This amount was prorated to determine March 1985 electric.)    16.79

(3) Cleaning and Renovation      2,200.00

(4) Common area maintenance
1985 —| $96 nine months (average of yearly amount)

1984 — total $1,116.55
less     260.00 paid

$ 856.55 year     504.84
Per month $71.38

Total — 3 months from 1984 — $214.14
3 months from 1985 — $290.07

$504.84

(5) Water and sewer
    September 1984 — March 1985       37.04

(6) Taxes
    1984 — $59.75
    1985 — $24.85

    Total   $84.60              84.60

(7) Less security deposit      (-$1,770.00)

                Sub-Total   $ 5,677.83

(8) Five percent attorney's fees    283.89

                   Total   $ 5,961.72

## JUDGMENT

And now, February 26, 1988, the court enters judgment in favor of plaintiff and against defendant in the amount of $5,961.72.