## Essex House Apartments v. Keyser

*Steven Abramovitz*, for plaintiffs.
*Sheldon L. Keyser*, for defendant.

WETTICK, *J.*, September 7, 1994—The landlord brought an action against the tenant to recover rent for five and one-half months. The pleadings establish that in January 1992 the tenant (an 87-year-old man living by himself) renewed his lease for a one-year term beginning May 1, 1992. On May 4, 1992, the tenant's son sent a letter to the landlord advising him that the tenant was in a rehabilitation center as a result of a fractured pelvis and that he must terminate his lease effective immediately because the apartment building did not have the amenities which his condition required for his continued health and safety. The letter included the May rent. On May 8, 1992, the landlord sent a letter to the tenant's son stating that the lease did not provide for termination based on such circumstances and that it remained in effect through April 30, 1993. The letter further stated that it would be necessary for the tenant to pay the balance of the lease prior to vacating and that once this condition was met the landlord would make every effort to rent the apartment. Upon securing a tenant, refunds would be due.

In May 1992, the tenant's son removed his father's contents from the apartment. On November 15, 1992, the landlord rented the apartment. Thereafter, the landlord filed this lawsuit to recover rent for the five and

one-half month period from June through the middle of November for which no rental payments were made.

The tenant's only remaining defense to the claim for rental payments is the failure of the landlord to take reasonable steps to mitigate damages. The landlord has filed a motion for summary judgment in which it contends that this defense is invalid as a matter of law.

The lease between the parties provided that the lease could be terminated prior to the expiration of the term only upon the written consent of the landlord and at the landlord's sole discretion. Consequently, the issue raised by the landlord's motion for summary judgment is whether the law imposes any duty on a landlord to mitigate damages where there is no obligation in the lease for the landlord to seek a new tenant prior to the termination of the leasehold.

It is the landlord's position that under Landlord-Tenant Law a landlord is not required to mitigate damages. Once the tenant vacates the premises, there is no duty imposed on the landlord to make reasonable efforts to re-rent the premises prior to the expiration of the leasehold. The tenant, on the other hand, contends that the lease agreement is governed by established contractual principles that impose a duty to mitigate damages.

There is limited Pennsylvania appellate court case law that has addressed this issue. In *Milling v. Becker*, 96 Pa. 182 (1880), the court rejected the tenant's argument that the landlord had a duty to re-rent the premises prior to the expiration of the term of the leasehold. The court said that "... he [the landlord] was not bound to rent to another during the term for relief of the defendant. Nothing in the original contract obligated him to seek another tenant, and had he done so and put

one in possession of the premises, he could recover no rent of the defendant accruing thereafter. That, indeed, would have relieved the defendant—a most absurd thing for him to do if he wished to hold his contract with her." *Id.* at 185-86.

In *Auer v. Penn*, 99 Pa. 370 (1882), after the original tenant vacated the premises, the landlord leased the premises to other tenants for portions of the remainder of the term. At the end of the term, the landlord sued for the difference between what he was owed under the original lease and the rent received from additional tenants. The original tenant argued that the landlord's leasing the premises to other persons constituted an acceptance of the tenant's surrender of the premises which ended the lease. The Supreme Court of Pennsylvania rejected this argument holding that it cannot be presumed that the landlord's actions constitute an acceptance of the surrender because the renting of the premises to another tenant furthered the interests of the original tenant. The opinion contained the statement that

"The landlord may allow the property to stand idle, and hold the tenant for the entire rent; or he may lease it and hold him for the difference, if any." *Id.* at 375-76.

In *Ralph v. Deiley*, 293 Pa. 90, 141 A. 640 (1928), the tenant who abandoned the premises argued that the landlord's re-renting the property during the term of the original lease without giving notice to the original tenant that he was doing so constituted acceptance of the surrender of the premises. The court rejected this argument, again holding that an act done to minimize the lessee's liability does not discharge the lessee from the promise to pay rent. This opinion contained the following statement:

"The landlord, under his common law right, for the protection of the demised premises, has a legal right

to enter. On this theory he could permit the premises to remain idle and recover for the balance of the entire term: 16 R.C.L. 969, section 431. Re-letting is not imposed on a landlord as a duty *(Auer v. Penn, supra);* and he cannot be held liable for failure to rent where a tenant is offered: *Lipper v. Bouve, Crawford & Co., supra* [6 Pa. Super. 452 (1898)]. Nevertheless, a landlord should be reasonably diligent in securing a desirable tenant for the best rent obtainable to minimize the first lessee's loss: *In re Mullings Clothing Co., supra* [238 F. 58, 66 (2d Cir. 1916)]." *Ralph v. Deiley,* 293 Pa. at 95, 141 A. at 643.

In *Brill v. Haifetz,* 158 Pa. Super. 158, 44 A.2d 311 (1945), the tenant who had vacated the premises also argued that the re-renting of the premises during the term of the lease without so advising the tenant constituted an acceptance of the surrender of the premises. The court rejected that argument on the ground that the lease contained a covenant allowing the lessor to re-rent the premises and to recover the loss of the rent from the original tenant. The court's opinion said that

"She [the landlord] carried out her duty of doing what she could to minimize the damages by putting up a 'for rent' sign and advertising for a tenant in the newspapers." *Id.* at 163, 44 A.2d at 313.

In *Cusamano v. Anthony M. DiLucia Inc.,* 281 Pa. Super. 8, 421 A.2d 1120 (1980), the Superior Court found that the tenant had vacated the premises in the fourth month of a one-year term and awarded the landlord the rental due for the remaining eight months of the renewal term. In footnote nine of the opinion, the court stated that since the record revealed an effort on the part of the landlord to mitigate the tenant's damages by endeavoring to re-let, "we need not consider the question of whether modern Pennsylvania juris-

prudence recognizes a duty on the part of a landlord to mitigate the damages recoverable from a tenant who abandons or fails to occupy leasehold premises. See *Ralph v. Deiley*, 293 Pa. 90, 141 A. 640, 61 A.L.R. 763 (1928), and 21 A.L.R.3d 534 (1968)." *Cusamano v. Anthony N. DiLucia Inc., supra* at 19 n.9, 421 A.2d at 1125 n.9.

The common pleas court opinions which have discussed this issue state that the law in Pennsylvania as to the landlord's duty to mitigate damages is not clear. *Boesch v. Ericsson*, 9 D.&C.4th 20 (Erie 1990); *Blanchard v. DiNardo*, 48 D.&C.3d 268 (Bucks 1988); *Hoffman Estate*, 47 D.&C.2d 32 (Philadelphia 1969). But see *Brumbach v. Kaufman Carpet Co. Inc.*, 67 Berks L.J. 18, 25 (1974) ("Plaintiff has a duty to make reasonable efforts to mitigate damages"); *West Norriton Industrial Park v. Snappy Car Rental Inc.*, 118 Montg. L. Rep. 73, 78 (1986) ("Inasmuch as the breach represents a lost-volume sale, the non-breaching party is entitled to lost profits without a duty to mitigate").

Under ordinary contract principles, a party to an agreement has a duty to mitigate damages. Restatement (Second) Contracts §350. For example, the employee who has been wrongfully terminated must seek other employment; the lessee of a commercial lease who is wrongfully evicted must seek another location for its business; and the lessor of an automobile that is repossessed prior to the expiration of the lease must attempt to lease or sell the automobile.

The rationale which the case law offers for treating lease agreements different from other contracts is based on the characterization of a lease agreement as a transfer of an interest in real property. During the term of the lease, the tenant is the owner of a property right. Consequently, the landlord should not be permitting a third

person to occupy the premises. See Annotation, *Landlord's Duty, on Tenant's Failure to Occupy, or Abandonment of, Premises, to Mitigate Damages by Accepting or Procuring Another Tenant*, 21 A.L.R.3d 534, 548-49 (1968).

Since the common law characterized a leasehold interest as a property right, under the common law a landlord could not terminate a tenant's lease during its term even for nonpayment of rent. The landlord was required to await the expiration of the term before gaining possession of the premise. The landlord's remedy during the term of the lease was to recover the rent that was due through a contract action. *Clark v. Everly*, 8 Watts & Serg., 226, 230 (1844).

Legislation has altered the common law by permitting landlords to obtain possession of the property during the term of the lease for nonpayment of rent. Consequently, the rationale for the case law relieving the landlord of any duty to mitigate damages—the absence of the ability to permit a third person to occupy the premises—no longer exists. Since the tenant's right to occupy the premises is now dependent on compliance with the promise to pay rent, the lease agreement is virtually identical to any other contractual relationship.

Also, at least for residential leases, Pennsylvania case law now treats lessors in the same fashion as any other businesses which provide goods and services to consumers. In *Commonwealth v. Monumental Properties Inc.*, 459 Pa. 450, 329 A.2d 812 (1974), the Supreme Court of Pennsylvania held that the Unfair Trade Practices and Consumer Protection Law covers the leasing of residential property. The rationale for the opinion was that contemporary leasing of residences envisioned a landlord exchanging a bundle of goods and services for the periodic payment of rent. The court said that

the purchaser of this bundle of goods and services (the tenant) "is as much a consumer as is the purchaser of an automobile, household appliance, or any other consumer good." *Id.* at 468, 329 A.2d at 821. (footnote omitted)

In *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979), the Supreme Court of Pennsylvania abolished the doctrine of caveat emptor as applied to residential leases and held that a warranty of habitability by the landlord will be implied in all such leases. The rationale for the opinion was that a residential lease "is in the nature of a contract and is to be controlled by principles of contract law." *Id.* at 284, 405 A.2d at 903. The court also ruled that since the lease is a contract, traditional contract remedies will govern the enforcement of this implied warranty of habitability.

Since *Commonwealth v. Monumental Properties* and *Pugh v. Holmes* establish that the principles of contract law, including contract remedies governing the breach of contractual obligations, govern residential leases, I find to be valid the tenant's defense that the landlord failed to take reasonable measures to mitigate damages.[1]

## ORDER

On September 7, 1994, it is hereby ordered that plaintiff's motion for summary judgment is denied.

---

1. In this opinion, I need not decide (1) what constitutes reasonable efforts to mitigate damages (consider, for example, a landlord who has other identical units that are vacant at the time of the breach, a landlord's unwillingness to enter into a lease of the vacated premises for less than one year, a landlord's unwillingness to rent the vacated premises for less than the rental due under the original lease), (2) the extent to which a lease provision may govern the duty to mitigate damages, and (3) whether the burden of proving a reasonable attempt to mitigate damages is placed on the landlord or the tenant.